## COOKE v. BANGS, Jr.

### (*Circuit Court, D. Minnesota.* June Term, 1887.)

JUSTICE OF PEACE—LIABILITY FOR FALSE IMPRISONMENT.

> Where a justice of the peace having power to commit for contempt, as in Minnesota, commits a person for contempt, and on such person being liberated on *habeas corpus* recommits him on a fresh warrant for the same offense, such justice is not amenable to a civil action for false and malicious imprisonment, though his action in making the second commitment was erroneous, and although it is alleged that he acted maliciously.

This was an action for false and malicious imprisonment brought by plaintiff against the defendant, who is a justice of the peace, residing at Glyndon, Minnesota. The complaint states that on April 8, 1885, the defendant, being a justice of the peace, did of his own motion, no complaint having been made by any person, falsely, maliciously, and without reasonable or probable cause, issue the following false and pretended warrant for the arrest and apprehension of the plaintiff:

STATE OF MINNESOTA, COUNTY OF CLAY—SS.:

"*The State of Minnesota to the Sheriff or any Constable of said County:*

"Whereas, ——— has this day complained in writing to me on oath that ———, on the twenty-eighth day of October, A. D. 1884, at Glyndon, in said county, H. Dell Cooke, on being required to sign a recognizance to appear at the next term of the district court for the county of Clay, did beg to be excused from the same, and did agree to consult with the county attorney of said county as to the necessity of his being present at said term of said court, and did agree to report to me, by a note from the said county attorney, the result of said consultation, the intention of this court being to excuse him from signing the recognizance only in case of direct permission of said county attorney; and whereas, said Cooke did fail to report the result of any such visit to me, but, instead, did leave the state privately, and without signing the said recognizance: now, therefore, the said Cooke is charged by me with criminal contempt against the form of the statute in such case made and provided, and against the peace and dignity of the state of Minnesota. Now, therefore, you are commanded forthwith to apprehend the said H. Dell Cooke, and bring him

before me, to be dealt with according to law, and you are also commanded to summon material witnesses in said complaint to appear and testify concerning the same.

"Given under my hand this eighth day of April, 1885.

"WILLIAM H. BANGS, Jr., Justice of the Peace."

—That by virtue of said warrant the plaintiff was arrested, brought before this defendant, and, without hearing any evidence, the defendant imposed a fine against plaintiff of $24.30, including costs; and in default of payment adjudged that he be confined in the county jail for two days; and that, on his refusal to pay said fine, plaintiff was taken to Moorhead, in charge of an officer, and imprisoned in the county jail of Clay county for 24 hours. That at the expiration of that time he was taken before a court commissioner on a writ of *habeas corpus*, who, after due hearing, adjudged and determined that the charge against this plaintiff was false, sham, illegal, and void, and that plaintiff be then and there discharged from custody, fully acquitted, and that said prosecution is wholly ended and determined. For a second cause of action, plaintiff alleges that on the fifth day of June, 1885, the defendant issued another commitment, for the same charge and judgment as before, authorizing this plaintiff to be imprisoned in the county jail for the space of two days, and by virtue thereof he was imprisoned in the county jail for the space of 12 hours; and on the sixth day of June, 1885, on another writ of *habeas corpus*, was examined before said court commissioner, who, after hearing the case, adjudged and determined that said arrest and imprisonment were malicious, illegal, and void, and then and there ordered the plaintiff to be discharged out of custody, fully acquitted, and that the said last prosecution is wholly ended and determined. The defendant answered, denying malice, and justifying his actions in the premises. The case came on for trial, and with a jury, and the defendant objected to any evidence being introduced tending to show malice on the part of the defendant, on the ground that no action would lie against a justice of the peace who was acting within his jurisdiction, even if malice were shown to exist.

*O. Mosness* and *C. K. Davis*, for Cooke, plaintiff and appellant.

*F. D. Larrabee* and *Gordon E. Cole*, for appellee.

BREWER, J. The question which was argued and submitted is one of great public importance, and that question is this: Under what circumstances can a justice of the peace be held liable to a civil action for damages for an act done by him in his capacity as justice of the peace? Nothing is more important in any country than an independent judiciary; and nowhere is it so important, so absolutely essential, as under a popular government. No man can be a good judge who does not feel perfectly free to follow the dictates of his own judgment wheresoever they may lead him. And in a country where the people rule, and where popular clamor is apt to sway the multitude, nothing is more important than that the judges should be kept as independent as possible. And it is universal experience, and the single voice of the law-books, that one thing essential to their independence is that they should not be exposed

to a private action for damages for anything that they may do as judges. It goes without saying that no man would feel free if he knew that, the moment that his decision was rendered, the party aggrieved, (for one party is always defeated,) construing his judgment to be based upon malice, or to be founded upon corruption, could bring him into the next court, and make him answer to an action for damages. And the same reasons for according that protection to a judge of a superior court exists in respect to a justice of the peace. It is true that their jurisdiction is limited, but they stand nearer to the people than the judges of the superior courts, and are more liable to be influenced by popular feeling; and it is therefore even more important that the rule should be enforced so that they may be accorded that immunity from suit which will lead to independence of action. Nor is there any danger that this immunity from suits for damages will leave the judges superior to the law, or as feeling that they are above the law, and not amenable to it. There is ample protection and guaranty against misconduct on the part of a judicial officer, be he high or low.

In the first place, there is no officer with respect to whose integrity and character the people in this country are more particular than they are in respect to that of a judge. The people insist upon purity of life and integrity of character in the incumbent of that office, and they are as jealous of that as of any other right. A man may vote for a person for some office about whose integrity of life he may have doubt, but he is very loth to place a man in any judicial position as to whose integrity of character he has even a suspicion. Not only that, but the moment that one holding a judicial office is suspected of corruption, or of being actuated by malice, he becomes very rapidly socially ostracized. Whenever the suspicion attaches, it is as ruinous to him as when a suspicion of want of chastity attaches to a woman. Again, he is just as amenable to the criminal law as any private citizen. There is no judge, from the judge of the supreme court of the United States at Washington, to a justice of the peace in the smallest township of the state, who, acting on any judicial matter from corruption or from malice, but becomes amenable to the criminal law the same as any other man, and may also be removed from office by proper proceedings. So there is no danger of judges as a class feeling that they are above the law, or becoming independent of the law, or indifferent to the rights of others. This rule, which is founded on experience, is upheld with uniformity by the authorities so far as superior courts are concerned. There is scarcely a dissenting voice in all the long story that has been told in the history of the common law. With respect to all judicial officers,—justices of the peace, as well as judges of the higher courts,—the settled law of the supreme court of the United States, and I think the plain intimation of the supreme court of this state, is that, where they act within their jurisdiction, they are not amenable to any civil action for damages. No matter what their motives may be, they cannot be inquired into.

In the case of *Randall* v. *Brigham*, 7 Wall. 535, the court says: "Now, it is a general principle, applicable to all judicial officers, that they are

not liable to a civil action for any judicial act done within their jurisdiction."

A more extensive discussion of the question appears in the case of *Bradley* v. *Fisher*, 13 Wall. 335, where the court go a step further, and hold that judges of courts of record of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. This was all that it was necessary to decide, because the defendant was a judge of a superior court. In that case there is a very careful exposition of the reasons which underlie the rule; and that the court affirm, both in the case of *Randall* v. *Brigham*, and in the case which I have just cited, the rule that justices, as well as all other judicial officers, are exempt from liability to an action for damages for acts done within their jurisdiction, is made clearer by the dissenting opinion of Mr. Justice DAVIS, with whom concurred Mr. Justice CLIFFORD:

"I agree that judicial officers are exempt from responsibility in a civil action for all their judicial acts in respect to matters of controversy within their jurisdiction. I agree, further, that judges of superior or general authority are equally exempt from liability, even when they have exceeded their jurisdiction, unless the acts complained of were done maliciously or corruptly. But I dissent from the rule laid down by the majority of the court, that a judge is exempt from liability in a case like the present, where it is alleged, not only that his proceeding was in excess of jurisdiction, but that he acted maliciously and corruptly."

He dissented alone upon that proposition.

In the supreme court of this state, against the judge of a court of record, it is true, in the case of *Stewart* v. *Cooley*, 23 Minn. 350, it was held that "no private action could be maintained upon any of these acts, decisions, or omissions, however erroneous they may have been, or by whatever motives prompted. An independent judiciary is justly regarded as essential to the public welfare and the best interests of society. Hence the doctrine has become settled that for acts done in the exercise of judicial authority, clearly conferred, an officer or judge shall not be held liable to any one in a civil action, so that he may feel free to act upon his own convictions, uninfluenced by any fear or apprehension of consequences personal to himself." Obviously, they do not limit it to judges of a court of record, for they say, "an officer or judge;" so, whatever may be the decisions elsewhere, or other expressions of opinion, I think it is settled law for this court that no judge is amenable to a civil action for damages for an act done within his jurisdiction, no matter how malicious or corrupt may have been his motives.

But the further question arises as to the rule when an act of a justice of the peace is in excess of his jurisdiction, and done maliciously. Can he, in such a case, be made amenable to a private action for damages? Here, the authorities are far from being in accord. I find no express adjudication on this question in the supreme court of the United States. A distinction should be but has not always been drawn, and that is between a case where a justice of the peace is acting simply in

excess of his jurisdiction, and one in which he attempts to act in respect to a subject-matter of which he clearly has no jurisdiction. That distinction is noticed in this case of *Bradley* v. *Fisher, supra,* and it is very important to be borne in mind:

"A distinction must be here observed between excess of jurisdiction and a clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority; and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other question involved in the case, although upon the correctness of his determination in these particulars the validity of his judgment may depend. Thus, if a probate court, invested only with authority over wills, and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if, on the other hand, the judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to arrest and trial of the party charged with such act, or should sentence the party convicted to a greater punishment than that authorized by the law, upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him; for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed, some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons."

Many other illustrations may be suggested. A justice of the peace in most states, and I presume in this, has no jurisdiction to try a man for felony, or to sentence to the penitentiary. That is a subject-matter which is entirely outside of his jurisdiction. If he assumes to try a man for manslaughter, and sentences him to the penitentiary, he is proceeding in a direction which is entirely outside of the scope of his jurisdiction. On the other hand, he may have jurisdiction of assaults and batteries, and does in most states. Suppose he proceeds to try a man charged with assault and battery, and suppose, in fact, the assault and battery was committed outside of the county over which his jurisdiction extends; then, although his judgment would be erroneous, and in excess of his jurisdiction, yet, having jurisdiction of the subject-matter of assault and battery, and of the person of the defendant, it lies with him to determine whether such particular assault and battery comes within his jurisdiction; and his determination, though erroneous, ought not to subject him to an action for damages. He has jurisdiction of the subject-matter, and it is for him to determine whether the case is within his jurisdic-

tion. He has the right to determine the question; and although he may determine wrongly, and although it may be a case which does not come within the limitation of his jurisdiction, and although he may have exceeded his authority, yet he had the power and the right to determine whether or no he had that jurisdiction, and it cannot be said to be a case wherein the entire subject-matter was outside of his jurisdiction.

In two cases cited, which I have examined with some care,—the cases of *Rutherford* v. *Holmes*, 66 N. Y. 368, and of *Vaughn* v. *Congdon*, 56 Vt. 111, in both of which cases there was a dissenting opinion,—the majority of the court failed, as it seems to me, to recognize or appreciate that distinction. In the latter case, the complaint filed before the justice charged an offense barred by the statute of limitations, and the majority of the court held that the act of the justice in issuing the warrant was beyond his jurisdiction, and that he was liable for damages. Mr. Justice Powers, in his dissenting opinion, draws this distinction very clearly and justly, and holds that, where a complaint was filed before a justice of the peace charging an offense whose general nature was within his jurisdiction, it was for him to determine whether that particular offense was cognizable by him, and that for any error on his part in that respect he ought not to be held liable. There is a very long citation of authorities in the discussion of the principle in that dissenting opinion. I think that distinction becomes important in this case. This is in some respects not unlike the case of *Rutherford* v. *Holmes*, 66 N. Y. *supra*, where a justice of the peace adjudged a person in contempt, and the majority of the court held him amenable to an action for damages because he erred in that particular matter in adjudging the party guilty of contempt, and committing him. Two judges there dissented.

A justice of the peace had power at the common law, and has power under your statutes, to punish for contempt. Now, if the statutes took away from him all power to punish for contempt, then it might well be argued that, if he attempted to exercise that power, he was proceeding in a matter over which he had no jurisdiction. The entire subject-matter was taken from him. He was usurping authority just as plainly as if he were trying a man for murder. But where, by clear authority coming down from the common law, and under all the limitations imposed by your statutes, he has power to determine whether a man is guilty of contempt through disobedience of his legal orders and processes, then, if he determine that question, it cannot be said that he is walking in territory over which he has no jurisdiction, but only that he is attempting to determine whether the particular case is one which brings the party within the scope of the law. Whether he determines rightly or wrongly,—whether he is mistaken or not,—he has determined the question of jurisdiction judicially, having jurisdiction over the subject-matter, and that this party was in contempt; and, having made such judicial determination, I see no reason or principle why he may not be accorded the immunity which is accorded to any other judicial officer.

Of course, it becomes a very close question when you come to the second count in this complaint; for there it is charged that after the

*habeas corpus* had been issued, and the plaintiff discharged, a second warrant of commitment was issued, and the plaintiff again incarcerated; and the claim is made, and forcibly made, that such an act on the part of the justice was a clear invasion of the privileges which are sacredly guarantied to the individual under the writ of *habeas corpus*. It is very doubtful whether this action of this justice was not in respect to a subject-matter over which he had no jurisdiction; and yet, while it is doubtful, I still think that the protection which should be accorded to him goes with him in that respect. The writ of *habeas corpus* lies to discharge a person from any illegal imprisonment. It may be illegal because the writ which the officer holds is technically deficient; it may be illegal because the proceedings of the court which ordered the commitment are so far irregular that they cannot be sustained; or it may be because the officer or judge who issued the commitment had no power in the premises. When a party is discharged while under commitment, the judge who in the first instance issued that commitment may have the power to inquire upon what the discharge was granted, and to determine whether the case is one where a second warrant should issue.

As I suggested during the argument, if a man is convicted, in a court of proper jurisdiction, of the crime of manslaughter, and all the proceedings in court down to the judgment are regular, but the *mittimus* which is issued is technically deficient, in that the seal of the court is not affixed to the writ, a writ of *habeas corpus* may discharge the prisoner from that confinement; but would it, even if the judge issuing the writ of *habeas corpus* should hold that it released him from the whole burden of that sentence,—would it prevent the trial court from issuing a new commitment, with the seal of the court attached, based upon the judgment already entered, and sending the defendant to the penitentiary? A trial court, the court which issued the commitment, may not in all cases be absolutely debarred, from the mere fact that a party is discharged upon *habeas corpus*, from the power of inquiring into and determining whether the case is one in which a second writ of commitment can issue. At least, his action in that respect cannot be held to be in respect to a matter over which he clearly had no jurisdiction. Of course, the officer arresting a party cannot arrest him upon that first writ, because it has been exhausted,—it has become *functus officio;* but the trial court may have the right to inquire whether the circumstances are such that a new commitment shall issue.

The defendant in this case, in issuing this second warrant, I think, clearly acted erroneously. But the proceeding, although erroneous, was within the limits of a jurisdiction vested in him, for he had jurisdiction over the matter of contempt; and it seems to me that the public policy which requires an independent judiciary compels that he should be held not amenable to a civil action for damages. The objection to the introduction of the testimony is sustained.