In re Frank B. Craig, 20 Haw. 447.

IN THE MATTER OF THE APPLICATION OF FRANK B. CRAIG FOR A WRIT OF HABEAS CORPUS FOR AND ON BEHALF OF RAMON ORTIZ, JUAN ORTIZ, JOSE REYES, LIBERATE GOMEZ, CANDIDIO RIVERA, IGNACIO HOHEB, CARLITO HOHEB, BASILIO, VINCENTE, MIGUEL, EUGENIO, GRACIAS, IZAKAEL CASTANEDA, MAXIMINIO AND EUGENIO.

ORIGINAL.

HEARD APRIL 3, 4, 1911.                    DECIDED APRIL 8, 1911.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

WITNESSES—*recognizances to appear before grand jury—inherent power of circuit judges to require.*

Circuit judges at chambers have not inherent power, aside from statute, to require proposed witnesses to give recognizances to appear and testify before the grand jury, when the accused has not been committed for trial or held to await the action of the grand jury and no indictment is actually under consideration by the grand jury or to commit the witnesses to jail without giving them an opportunity to furnish the recognizances.

ID.—*statutory power of circuit judges.*

Under the circumstances above stated circuit judges at chambers have not the said power to require recognizances or to commit to jail, either under R. L., §1899, or under R. L., §1648, or under Org. Act, §83, or under all of said sections.

OPINION OF THE COURT BY PERRY, J.

Upon an application by the attorney-general of the Territory a circuit judge of the first circuit made an order requiring seventy-eight persons therein named "to enter into a recognizance to appear and testify before the grand jury of this court in the matter of an indictment about to be preferred against E. de Guzman and others for violation of Act 57 of the Laws of 1905," directing that "in default of the furnishing of such recognizance the parties above referred to be arrested and confined in Honolulu jail until the hearing of said matter before

the grand jury and until after the hearing of any indictment which may be brought in and by said grand jury against said E. de Guzman and others for violation of the statute hereinbefore referred to" and commanding the sheriff of the City and County of Honolulu and other officers to enforce the order. In pursuance of the order fifteen of the persons named were arrested on board the American steamer Korea then lying alongside of the dock in the harbor of Honolulu as it was about to leave for San Francisco in the State of California, and were taken to Honolulu jail and there detained by the respondent, who is the jailer of that institution. Thereupon a petition was filed in this court on behalf of the fifteen, praying for the issuance of a writ of habeas corpus to test the legality of their detention.

The petition sets forth fourteen grounds of alleged invalidity of the order of detention, which may be summarized as follows: first, that the statute under which the order purports to have been issued is unconstitutional; second, that the order is unauthorized by the statute and is otherwise unauthorized by law; third, that at the time of the making of the order the fifteen persons, subsequently arrested, were beyond the jurisdiction of the court issuing it; fourth, that the persons arrested by virtue of the order were given no opportunity to appear before the court issuing it to give recognizance as required; and fifth, that the application of the attorney-general was based solely on information and belief and without knowledge on his part concerning the materiality of the evidence of the proposed witnesses.

The writ issued as prayed for. In his return the respondent admits the detention and seeks to justify it under the order of the circuit judge; alleges that there have been brought, and are now pending, criminal complaints in the district court of Honolulu against Frank B. Craig and two others for engaging in business as emigrant agents without first obtaining a license; denies that the attorney-general's application was based solely

upon hearsay and sets forth with some detail the extent of the knowledge and information on the subject possessed by the attorney-general at the time of the making of the application.

The sworn application of the attorney-general, upon which the order in question was based, sets forth, inter alia, that that official "is informed and verily believes that one E. de Guzman and others have for a period of more than three months last past within the City and County of Honolulu, and elsewhere within the Territory of Hawaii, been recruiting laborers to work without the limits of the Territory of Hawaii, and acting within said Territory of Hawaii as emigrant agents without first having obtained a license so to do, as provided by law;" that the seventy-eight persons, subsequently named in the order and including the fifteen petitioners in this case, "are persons who have been induced by the said E. de Guzman and others to leave their employment within the Territory of Hawaii and go elsewhere, the same being laborers and the same being employed to go elsewhere as laborers without the Territory of Hawaii, and \* \* \* are now \* \* \* ready to depart from this Territory upon the first steamer that leaves Honolulu en route for California or the western coast of the United States, to-wit, the steamer 'Korea' sailing at 4 P. M. this day;" and that "said persons, above named, are material witnesses for the prosecution of a criminal indictment about to be preferred against the said E. de Guzman and others;" and prays for an order "that the several witnesses, whose names are given above, may be required by this court to enter into a recognizance to appear and testify before the grand jury of this court or before this court upon any indictment rendered by the said grand jury against the said E. de Guzman and others, and in default of their furnishing said recognizance that the said witnesses be confined within the Honolulu jail pending the hearing before such grand jury and before said circuit court upon such indictment if the same be returned and filed."

Of the grounds, as above summarized, for attacking the in-

dictment the third has been expressly abandoned and in the view which we take of the matter the first, fourth and fifth need not be considered.

One of the contentions advanced on behalf of the respondent is that each of the circuit judges at chambers possesses, without aid of statute, inherent power to require of proposed witnesses recognizances for their appearance before the grand jury and at the trial and to commit them to jail in default of compliance. Some of the authorities express the view that this power is statutory only and has never been exercised in the absence of legislative grant. See, for example, *Comfort* v. *Kittle,* 81 Ia. 179; *Bickley* v. *Com.,* 25 Ky. 572; *In re Application of Clark,* 65 Conn. 17; *Ex parte Shaw,* 61 Cal. 58; 22 Pl. & Pr. 1343, and *In re Kawahara Yasutaro,* 15 Haw. 667. On the other hand it has been said or intimated that the power did exist at common law. See Underhill on Criminal Evidence, §254, and *Gwynn* v. *State,* 1 So. (Miss.) 237. Statutes upon the subject have been enacted in many, perhaps all, of the states. In England certain powers of this general nature were given by Stats. 1 & 2 Philip & Mary, c. 13, §5, and 2 & 3 Philip & Mary, c. 10, and later by 7 George IV., c. 64, §2, and 11 & 12 Vict., c. 42, §20. See *Evans* v. *Rees,* 12 A. & E., old series, 55, 58; Roscoe's Crim. Ev., pp. 115, 116; Wharton's Crim. Ev., §352, n. 3, and 1 Hale, Pleas of the Crown, p. 282. The statutes of George IV. (1827) and of Victoria (1848 & 1849) were enacted too recently to be regarded, in any possible meaning of that term as used in R. L., §1, as a part of the common law of England. Whether the early statutes of Philip & Mary (1553, 1554 & 1555) should be so regarded, or whether irrespective of those statutes the power existed at common law, need not be determined. The "common law" referred to by the above authorities, whether inclusive or exclusive of the statutes of Philip & Mary, gave the power to justices of the peace and coroners only and not to the courts of general jurisdiction corresponding in any degree to our circuit courts or

judges, limited it at most to cases where an indictment had been found or where the accused on a preliminary examination had been committed for trial or held to await the action of the grand jury and authorize imprisonment only in the event of refusal of the witnesses to appear or to furnish recognizances as ordered. Underhill on Criminal Evidence, §254, 2 Hale, Pleas of the Crown, p. 282, and Roscoe's Crim. Ev., pp. 115, 116. In the case at bar at the time of the issuance of the order no indictment had been found or presented or filed in court or submitted to the grand jury for finding either against E. de Guzman or against any other person charged with the offense mentioned in the affidavit of the attorney-general, no person had been, after preliminary examination by the magistrate, committed for trial or held to await the action of the grand jury and the proposed witnesses were committed to jail without having been given any opportunity to furnish recognizances. The order did not define the amount of the recognizances. Even if, therefore, certain powers of this general nature existed at the common law, whether with or without the aid of the statutes of Philip & Mary, they were not such as to support the issuance of the order now under consideration, both because they did not relate to courts of a jurisdiction similar to that possessed by our circuit courts and judges and also because they could be exercised only in a mode and under circumstances not followed or existing in the case of these petitioners.

The statute mainly relied upon by the respondent is R. L., §1899, reading as follows: "Witnesses, commitment in criminal cases. The attorney general or the sheriff of the several circuits may require of any judge of a court of record, at chambers, that witnesses material to the prosecution of any criminal indictment preferred, or about to be preferred, be bound by recognizance to appear and testify at the trial of such indictment or that such witnesses be committed to jail for that purpose, and it shall be lawful for the judge, so applied to, to make any such order." It is unnecessary to say whether the prin-

ciple that the enumeration of the one excludes all others applies in the construction of this statute in view of our ruling that our circuit judges, at chambers, do not, by any provision of the common law, possess powers sufficient to warrant the issuance of such an order as that in question. Under the terms of the statute the order there mentioned can only be made (1) when an indictment has been "preferred" or (2) when an indictment is "about to be preferred." Respondent concedes under the circumstances in this case that no indictment had been "preferred" within the meaning of the statute but claims that one was "about to be preferred," the argument advanced being, apparently, that the word "preferred" imports a presentation of the indictment for the purpose of being found, or in the alternative, a finding by the grand jury. Three possible constructions of the word suggest themselves, (1) that it refers to a formal presentation against the defendant in court, (2) that it refers to a filing in court for subsequent formal arraignment, and (3) that it refers to a submission to the grand jury for finding or rejection. What the correct construction is need not be determined, for even though that view be taken which is most favorable to the respondent the commitment is, in any event, invalid.

The order requires of the proposed witnesses recognizances "to appear and testify before the grand jury." What the statute authorizes,—and its language in this respect is clear—is a requirement to appear and testify "at the *trial* of such indictment." We are aware of no provision of the common law broader in this respect than the authority conferred by the statute. The "trial of such indictment" does not include an investigation by a grand jury which may or may not result in an indictment or trial. The order does, indeed, provide "that in default of the furnishing of such recognizance" the witnesses be detained "until after the hearing of any indictment which may be brought by said grand jury," but this cannot cure the defect. The witnesses cannot lawfully be detained for failure to com-

ply with an order to furnish recognizances not authorized by law.

Section 1648 of the Revised Laws, conferring upon circuit judges at chambers the power to issue "all other writs and processes, according .to law, to courts of inferior jurisdiction, to corporations and individuals, that shall be necessary to the furtherance of justice and the regular execution of the law" is also referred to by the respondent as authority for the issuance of the order. This section does not enlarge the powers conferred by section 1899. The writs authorized are writs "according to law," and section 1899 names all the purposes for which recognizances may be required or commitments ordered by circuit judges.

Reliance is also placed upon the provision of section 83 of the Organic Act that "the several circuit courts may subpoena witnesses to appear before the grand jury in like manner as they subpoena witnesses to appear before their respective courts." This, .we think, refers merely to the ordinary process of subpoena and the ordinary means of compelling obedience to such process and of punishing disobedience.

The power to bind over witnesses, by recognizance and by commitment to jail in default of such recognizance, to testify before grand juries as well as at trials, is essential to the due administration of justice in this Territory and legislation should be enacted providing for an extension, to this extent, of the remedy now furnished by our statute, subject always, of course, to proper limitations and safe-guards against the abuse of the power. (The writer deems it sufficient to say on this subject that if such an extension of the remedy is essential or desirable application for it should be made to the legislature.)

The petition for a writ of habeas corpus was signed by one Frank B. Craig on behalf of the fifteen persons already referred to and alleges that this course was followed "for the reason that it is impossible to obtain the signatures or oaths of said parties to a petition of a like nature in their own behalf,

they having been denied by the hereinafter named Julius W. Asch (acting under the instruction, as petitioner is informed and believes and, upon such information and belief alleges, of John W. Cathcart, Attorney for the City and County of Honolulu) the privilege of consulting counsel engaged to represent them or the right to affix their signatures to a petition prepared in their behalf directed to the Supreme Court of Hawaii, praying their liberty, which said petition so prepared said parties were and are willing and desirous of signing and having presented to said Supreme Court." The truth of this assertion was not denied in the return or in any of the evidence adduced. On the contrary it was attempted to be justified at the closing argument.

While no specific relief is asked of us in this respect we deem it appropriate to express our unqualified disapproval of the procedure complained of. One of the fundamental rights of every citizen is that of being represented by counsel in judicial proceedings and in this instance it is immaterial whether the request for the employment of counsel originated with the petitioners themselves or with some one else in their behalf. Impediments to the free exercise of this right by persons in the situation in which these petitioners found themselves are intolerable.

The order of the circuit judge is unauthorized by law and invalid. The petitioners are discharged.

*E. M. Watson* for petitioners.

*W. A. Kinney, S. M. Ballou* and *R. W. Anderson* (*Kinney, Ballou, Prosser & Anderson* on the brief) for respondent.