LIBERATO GOMEZ *v.* WILLIAM L. WHITNEY, ALEX-ANDER LINDSAY, JR., WILLIAM P. JARRETT, E. FAXON BISHOP, AND WILLIAM PFOTEN-HAUER.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED APRIL 21, 1913.                    DECIDED MAY 5, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

JUDGES—*civil liability for judicial acts—excess of jurisdiction.*

Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, provided there is not a clear

absence of all jurisdiction over the subject-matter. When jurisdiction over the subject-matter is invested by law in the judge or in the court which he holds, the extent and the manner in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his decision in these particulars the validity of his judgment may depend, and for errors in his determination he is not civilly liable.

ID.—*circuit judge—order to secure attendance of witness.*

The circuit court of the first judicial circuit of this Territory and its judges at chambers are courts of superior and general jurisdiction. A judge of that court, sitting at chambers, who in excess of his jurisdiction issues an order requiring a person to enter into a recognizance to appear and testify before a grand jury then engaged in investigating the commission of an offense within the general jurisdiction of the court and commanding that in default thereof the proposed witness be committed to jail, is entitled to the protection of the rule rendering judges immune from civil liability for damages.

ATTORNEY-GENERAL—*civil liability for official acts—application for order in excess of court's jurisdiction.*

The attorney-general of the Territory is not civilly liable in damages to a person imprisoned under an order made by a circuit judge at chambers in excess of his jurisdiction but in a matter within the general jurisdiction of the court over which he presides and issued upon application of the attorney-general supported by the latter's affidavit and presented in good faith, without the use of improper means and without improper motives.

SHERIFFS AND CONSTABLES—*civil liability—protection afforded by process.*

The law protects an officer in the execution of process if it is in due form and issued by a court which apparently has jurisdiction of the case, although it may have in fact been issued wrongfully or without authority.

ID.—*service of order compelling attendance of witness.*

A sheriff to whom a judicial order requiring a certain person to enter into a recognizance to appear as a witness and commanding that in default thereof the proposed witness be committed to jail is delivered for service and who, proceeding immediately to the performance of his duty, finds the proposed witness, with the admitted intention of departing from the jurisdic-

tion, on board of an ocean-going steamship about to cast loose from the dock, does not render himself civilly liable by failing to inform the person named, before taking him ashore, that he may enter into a recognizance, where it further appears that the proposed witness was unable to give bail, that there was no opportunity before the steamship sailed to arrange for and enter into a satisfactory recognizance and that after the arrest the proposed witness remained in custody four days without offering to furnish a recognizance.

FALSE IMPRISONMENT—*liability of persons complaining—invalid order for detention of witness.*

Persons directly interested in the prosecution of an offender who, either personally or indirectly through their attorneys, request of the attorney-general and the court having general jurisdiction of the subject-matter that an order be issued designed to secure the attendance of a certain witness are not liable in an action for damages resulting in consequence of the order, even though the order prove to have been in excess of the jurisdiction of the court.

## OPINION OF THE COURT BY PERRY, J.

In pursuance of an order made by the defendant Whitney, who was a judge of the circuit court of the first judicial circuit, upon the motion and affidavit of defendant Lindsay, who was the attorney general of the Territory, the plaintiff in error was, on March 31, 1911, taken into custody by defendant Jarrett, then sheriff of the City and County of Honolulu, and detained in the county jail until April 4 following when he was released on nominal bail in *habeas corpus* proceedings instituted in his behalf in this court. Subsequently the order of commitment was declared invalid and the plaintiff in error was discharged, the court holding that the circuit judge did not, under the circumstances of the case, have power, either inherent or statutory, to make the order complained of. *In re Craig,* 20 Haw. 447. Thereupon an action was brought by him to recover damages for the arrest and imprisonment, the allegation in the declaration being that Jarrett acted in the matter at the instigation and order and by the procurement of the other defendants, that each

of the defendants acted with a wanton disregard of the rights
of the plaintiff and with malice and without probable cause and
that defendant Whitney issued the order not as a judge of the
circuit court "or in any other judicial capacity, but, on the con-
trary, * * * in his capacity as an individual, although, * * *
falsely purporting and pretending to act therein in his capacity
as a judge." The defendants pleaded the general issue. At the
conclusion of the evidence for the plaintiff, the court granted
defendants' motion for a non-suit. Hence this writ, the judg-
ment and certain rulings relating to the admissibility of evi-
dence being assigned as error.

The litigation of which this case is a part arose out of at-
tempts said to have been made by one Craig and others in the
early part of 1911 to induce, without first having obtained a
license so to do, laborers employed in these Islands to go beyond
the limits of the Territory. A committee of the Hawaiian
Sugar Planters' Association, of which defendants Bishop and
Pfotenhauer were members, retained the law firm of Kinney,
Ballou, Prosser, Anderson & Marx "to follow the matter", as
testified by one of plaintiff's witnesses, "and if they found the
law was being violated to take it up with the public prosecutors
and punish the people, whoever might be violating the law",
"to see that the laws in regard to the recruiting of labor were
observed and, if they were not, to prosecute whoever was vio-
lating them", "to protect the situation within the laws." Un-
der the direction of the county attorney proceedings were insti-
tuted before the grand jury of the circuit court of the first cir-
cuit "looking towards an indictment" of Craig and certain men
named De Gusman, Alvarado and Balthazar and perhaps one
or two others. While these proceedings were pending, the firm
of attorneys above mentioned on March 31, 1911, requested of
the attorney-general that he make application to the circuit
court for an order requiring the plaintiff and certain other
laborers named to give recognizance for their appearance as
witnesses and committing them to jail until the recognizances

were furnished, representing that the plaintiff and others were material witnesses in the prosecution of Craig and other alleged emigrant agents and were about to depart for the mainland on the S. S. "Korea" scheduled to sail on that day. The attorney-general after some hesitation and after satisfying himself as to the facts and hearing argument from attorneys representing Craig as well as from the planters' attorneys and after consulting, also, the county attorney, who took the view that the application should be made, executed the combined affidavit and motion already referred to. In that affidavit he deposed, upon information and belief, that "one E. de Guzman and others have for a period of more than one month last past within the City and County of Honolulu and elsewhere within the Territory of Hawaii, been recruiting laborers to work without the limits of the Territory of Hawaii and acting within said Territory of Hawaii as emigrant agents without first having obtained a license so to do, as provided by law"; that the present plaintiff and others named "are persons who have been induced by the said E. de Guzman and others to leave their employment within the Territory of Hawaii and go elsewhere, the same being laborers, and the same being employed to go elsewhere as laborers without the Territory of Hawaii, and that the parties above named are now, as deponent is informed and verily believes, ready to depart from this Territory upon the first steamer that leaves Honolulu en route for California or the western coast of the United States, to-wit, the steamer 'Korea' sailing at 4 p. m. this day"; and that the present plaintiff and others named "are material witnesses to the prosecution of a criminal indictment about to be preferred against the said E. de Guzman and others"; and prayed for "an order that the several witnesses whose names are given above may be required by this court to enter into a recognizance to appear and testify before the Grand Jury of this Court or before this Court upon any indictment rendered by the said Grand Jury against the said E. de Guzman and others, and in default of their furnishing said recognizance

that the said witnesses be confined within Honolulu Jail pending the hearing before such Grand Jury and before said Circuit Court upon such indictment if the same be returned and filed." Immediately thereafter the application was presented to defendant Whitney, sitting as judge of the circuit court of the first circuit. The judge heard argument, from the attorney-general on the one side and from Craig's attorneys on the other and signed an order requiring the plaintiff and other persons named in the affidavit "to enter into a recognizance to appear and testify before the grand jury of this court in the matter of an indictment about to be preferred against E. de Guzman and others for violation of Act 57 of the Laws of 1905", commanding that "in default of the furnishing of such recognizance the parties above referred to be arrested and confined in Honolulu Jail until the hearing of said matter before the grand jury and until the hearing of any indictment which may be brought in by said grand jury against the said E. de Guzman and others for violation of the statute hereinbefore referred to" and authorizing and directing the sheriff of the City and County of Honolulu "to carry into force and effect the foregoing order of commitment". Plaintiff and other laborers had been undergoing a five-day period of quarantine on Quarantine Island as required by regulations then in force in the port of Honolulu, preparatory to sailing for the mainland and the federal authorities had refused to permit service of subpoena on the plaintiff and the other laborers while in quarantine. Very shortly before the sailing hour the sheriff served Judge Whitney's order, on board of the steamer, on plaintiff and fourteen others of the seventy-eight named in the order as witnesses, taking them ashore just as the ship was about to leave the dock and thence conveying them to the jail.

All of the foregoing facts are shown by undisputed evidence adduced by the plaintiff. It further appears from that evidence, and no other finding on the subject would have been legally possible, that defendants Lindsay, Whitney and Jarrett

in respectively procuring, issuing and serving the order acted in good faith, in the performance of their respective duties as they understood them, and without actual malice or from any improper motive.

Upon the question of the liability of a judge of a court of record of superior and general jurisdiction for damages for errors of judgment as to the facts or as to the law, there is practically no conflict in the authorities. Considerations of public policy require that such a judge should not be held liable in damages to a defeated litigant or others affected by his orders for mistakes in his decisions of issues, whether of law or of fact, presented to him in his judicial capacity for determination. The subject is elaborately discussed in *Bradley* v. *Fisher,* 13 Wall. 335, the court saying, *inter alia*: "It is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility. The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. It has, as Chancellor Kent observes, 'a deep root in the common law.' Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of

judicial inquiry." (p. 347) "If * * * a judge could be compelled to answer in a civil action for his judicial acts, not only would his office be degraded and its usefulness destroyed, but he would be subjected for his protection to the necessity of preserving a complete record of all the evidence produced before him, in every litigated case, and of the authorities cited and arguments presented, in order that he might be able to show to the judge before whom he might be summoned by the losing party—and that judge perhaps one of an inferior jurisdiction—that he had decided as he did with judicial integrity; and the second judge would be subjected to a similar burden, as he in his turn might also be held amenable by the losing party." (p. 349) "Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend." (pp. 351, 352) It was further declared concerning certain erroneous, hypothetical rulings, that "no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed some of the most difficult and embarrassing

questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons." (p. 352) To the same effect are: *Randall* v. *Brigham,* 7 Wall. 523; *Allec* v. *Reece,* 39 Fed. 341; *Lange* v. *Benedict,* 73 N. Y. 12; *Taylor* v. *Goodrich,* 25 Tex. Civ. App. 109; *Calhoun* v. *Little,* 43 L. R. A. (Ga.) 630; *Rush* v. *Buckley,* 100 Me. 322; *Thompson* v. *Jackson,* 93 Ia. 376; *McIntosh* v. *Bullard,* 129 S. W. (Ark.) 85; and *Fray* v. *Blackburn,* 3 B. & S. 576.

In *Alau* v. *Everett,* 7 Haw. 82, cited by the plaintiff, the rule relating to judges of courts of superior or general jurisdiction was not involved and was not considered. The action was against a police judge, a court of inferior and limited jurisdiction. It was held that the order complained of "was beyond his authority and in excess of his jurisdiction and therefore void" and the verdict for the plaintiff was not disturbed. The court evidently took the view favored by Cooley that "when inferior courts or judicial officers act without jurisdiction the law can give them no protection." Cooley, Torts, p. 419. The modern tendency seems to be to hold that the same considerations which lead to the exemption of judges of superior jurisdiction apply to those of inferior jurisdiction and that the rule is the same in both classes of cases. See, for example, *Cooke* v. *Bangs,* 31 Fed. 640; and *Allec* v. *Reece, Calhoun* v. *Little, Rush* v. *Buckley, McIntosh* v. *Bullard* and *Thompson* v. *Jackson,* supra. However that may be, there is nothing in the opinion in *Alau* v. *Everett* militating against the adoption of the rule laid down in *Bradley* v. *Fisher.*

The circuit court of the first circuit is a superior court, of record, with jurisdiction of appeals in civil and criminal cases from all the magistrates within the circuit and of all criminal

offenses cognizable under the laws of the Territory committed within the circuit or transferred to it for trial by change of venue from some other circuit. R. L., §§1858 (amended by Act 23, 1909) and 1647. It has jurisdiction over all offenses committed in its circuit in violation of the statutes relating to emigrant agents and the soliciting of laborers to go beyond the limits of the Territory. The grand jury is a part of its machinery. It has power to subpoena witnesses to appear before the grand jury and also witnesses to appear at trials in the court itself; and to compel the attendance of such witnesses. Org. Act, §83; R. L., §1651. And its judges are authorized by statute, upon application of the attorney-general, to order that "witnesses material to the prosecution of any criminal indictment preferred, or about to be preferred, be bound by recognizance to appear and testify at the trial of such indictment, or that such witnesses be committed to jail for that purpose." R. L., §1899. The court and its judges have jurisdiction, further, of practically all civil causes at law, of all matters in equity, probate and divorce, and of the issuance of certain extraordinary writs. R. L., §§1647, 1658. The court is one, in short, of general jurisdiction. Defendant Whitney in this particular instance had jurisdiction over the prosecution of the alleged emigrant agents, of the proceedings before the grand jury relating to the matter, and of the securing of the attendance of witnesses before the grand jury and at the trial of any indictment that might be preferred. As held in the *Craig* case, he erred in issuing the order now under consideration; but within the rule of *Bradley* v. *Fisher,* the act was one merely in excess of his jurisdiction. There was not a "clear absence of all jurisdiction over the subject-matter." The determination of the question of whether the circumstances of the case were such as to justify and authorize the particular order requested of him was clearly a judicial duty imposed upon him by the law. In deciding it he acted as a judge and is entitled to the protection of the rule rendering judges immune from civil liability for damages.

Gomez v. Whitney, 21 Haw. 539.

The attorney-general, likewise, is not liable. In his affidavit he merely presented to the court the facts that had come to his knowledge, with the request that the steps deemed by him authorized by law be taken to ensure the presence of a necessary witness. It is not claimed, and could not be successfully claimed, that he made any misrepresentation as to the facts or used any other improper means to secure the order. He had no control over the judge and could do no more than to present his view of the law and the facts and then leave the matter to the determination of the court. If the judge erred, the attorney-general cannot be held responsible. The language of the court in *Teal* v. *Fissel,* 28 Fed. 351, is applicable. "To hold the prosecutor responsible in such case, who simply discharges a public duty in making information of a supposed offense, would not only be grossly unjust to him, but would also be highly injurious to the public interests. What reason or excuse can be suggested for holding him responsible for the justice's mistake? He has nothing to do with issuing the writ; no authority or influence respecting it. It is the justice's duty to pass upon the facts, and determine whether a warrant shall issue. His functions are judicial. This is all so plain that no question could be raised respecting it but for the loose and inconsiderate expressions to be found in a few reported cases. * * * The prosecutors did no more than lay the information before him. It is true, they say they went to obtain a warrant, and it is probable they told the justice that they desired the writ. But this is substantially what is done in every case. The prosecutor would not visit a justice if he did not think a warrant should issue; the object of his visit is to procure it. He has no control, however, over the justice, and knows that the warrant will issue or not as the justice may determine. If, through improper motives and improper means, he induces the justice to proceed, a different case is presented. Here the prosecutors honestly believed an offense had been committed, and that the information laid before him was truthful. They were therefore

in no respect responsible for what followed." See also *Dusy* v. *Helm,* 59 Cal. 188; *Griffith* v. *Slinkard,* 146 Ind. 117; and *Marks* v. *Sullivan,* 9 Utah 12.

The same result must follow as to the sheriff. "The law protects an officer in the execution of process or a warrant, if it is fair and regular on its face. He is not to look beyond the warrant. He is not to exercise his judgment as to whether or not the process is valid. If it is in due form and issued by an official who apparently has jurisdiction of the case or the subject matter, the officer must obey its commands. In such case the officer is protected in the service of the process, although it may have in fact been issued wrongfully or without authority." *McIntosh* v. *Bullard,* 129 S. W. (Ark.) 85, 88. To the same effect are: Cooley on Torts (2nd ed.) p. 538; *Jennings* v. *Thompson,* 54 N. J. L. 55; *Hofschulte* v. *Doe,* 78 Fed. 436; and *Rush* v. *Buckley,* supra. See also *Thompson* v. *Jackson,* supra; *Hallock* v. *Dominy,* 69 N. Y. 238; and *Wheaton* v. *Beecher,* 49 Mich. 348.

It is contended that the sheriff did not heed the terms of the order in that he did not, as it is claimed, inform the plaintiff before bringing him ashore from the S. S. "Korea" that he, the plaintiff, was privileged to give a recognizance and thus escape imprisonment; and that therefore the writ does not afford the sheriff protection. The contention cannot be sustained. The primary and sole object of the order was, as is apparent on its face, to ensure the attendance of plaintiff as a witness in Honolulu. At the moment of the service of the order the steamer was about to cast loose from the dock and the plaintiff was on board with the avowed intention of departing for San Francisco. In view of the object of the order the sheriff cannot be held liable if he first secured the plaintiff's continued presence in Honolulu and then gave him the opportunity to furnish the recognizance. Upon the undisputed evidence there was not sufficient time on board for the arranging and furnishing of a satis-

factory recognizance. Moreover the plaintiff's own testimony was that the sheriff informed him on board that he, the plaintiff, was wanted by the court as a witness and that the fact was that he was unable to give bail. He remained in custody four days and made no offer to enter into a recognizance. Under these circumstances the non-suit in favor of the sheriff was properly granted.

So, also, of defendants Bishop and Pfotenhauer. Their instructions to counsel were to act "within the law." Even if their attorneys joined in the request for the order and in the argument, before the attorney-general and the court, in support of the application, no liability exists. The reasoning with reference to the attorney-general applies. If the clients had made personal application to the attorney-general for the order the same result would follow.

The judgment is affirmed.

*C. W. Ashford* for plaintiff in error.

*J. W. Cathcart* and *F. W. Milverton* for defendants in error.