James CLARK, Appellant,

v.

D. Justin TAYLOR et al.

No. 79–2231.

United States Court of Appeals, District of Columbia Circuit.

Feb. 27, 1980.

As Amended March 5, 1980.

Richard W. Barton and David P. Sutton, Washington, D.C., were on the motion to dismiss or summarily affirm, for appellees.

James Clark, pro se, was on the opposition to motion to dismiss or summarily affirm, for appellant.

Before ROBINSON,* MacKINNON and WILKEY, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

We here apply the firmly established doctrine of judicial immunity to affirm the judgment of the District Court dismissing a civil complaint brought by a defendant in a criminal case against two judges who participated in various parts of the criminal proceedings against him in the Superior Court of the District of Columbia.

I

In this civil action filed in the United States District Court, appellant Clark seeks to recover $6 million in damages for violation of his constitutional rights alleged to have occurred in a District of Columbia Superior Court criminal proceeding in which he was a defendant. Appellant named as defendants two judges of the Superior Court, before whom he appeared at different times as defendant in the crimi-

nal case. He also joined the Attorney General of the United States and the United States Government.

Appellant's primary complaint is that the two judges [1] at different times maliciously interfered with his right to be assisted by counsel of his own choosing in the criminal proceedings.[2] His complaint alleges that on April 14, 1979, he appeared before Judge Revercomb with his retained attorney and trial was set for September 21, 1979, but that Judge Revercomb erroneously failed to enter into the record the appearance of appellant's counsel. Thereafter, Judge Taylor replaced Judge Revercomb on the case, and on August 10, 1979, appellant alleges, Judge Taylor ruled that appellant's counsel could not represent him because counsel had not met the required rules for appearance before the court. Appellant also quarrels with Judge Taylor's disposition of several of his motions.[3] Complaint at 1, 3–4.

On September 19, 1979, Judges Taylor and Revercomb moved to dismiss the complaint on the ground that the suit was barred by the doctrine of judicial immunity. The Honorable June L. Green, United States District Judge, by order entered September 21, 1979, granted their motion,[4] and by subsequent order granted a motion to dismiss filed on behalf of the Attorney General and the United States.[5] The matter

---

* Circuit Judge Robinson did not participate in this decision.

1. In appellant's most recent filing before this court, he indicates that his dispute is no longer with Judge Taylor, who has granted appellant time to seek a new attorney in the criminal proceeding. Since Judge Taylor remains the named defendant in this case, however, and has not been formally dismissed as a party, the result of this appeal will be fully applicable to him.

2. Appellant alleges that such interference contravenes the Sixth Amendment.

3. In his pleading, appellant avers that Judge Taylor "hastily ruled" on three of his motions, including, (1) a motion to inform the court of the misconduct of an Assistant United States Attorney; (2) a motion to dismiss the criminal proceeding because of the Government's failure

to show probable cause, and; (3) a motion to dismiss for the Government's failure to bring the case to trial within one year. Complaint at 3.

4. Judge Green denied appellant's motion for reconsideration of the court's dismissal of Judges Taylor and Revercomb as parties to the action, on November 6, 1979.

5. By Memorandum Order of October 31, 1979, Judge Green dismissed the remaining defendants because the United States had not consented to be sued in this type of action, and hence was not susceptible to suit under the doctrine of sovereign immunity, and because the Attorney General, although named as a defendant, was not again mentioned in the complaint and plaintiff had therefore failed to state a claim for relief as required by Fed.R. Civ.P. 12(b)(6).

now comes before us on appeal in the form of a motion to dismiss the appeal or alternatively to summarily affirm the order of the District Court dismissing appellant's complaint.

## II

■ The broad blanket of judicial immunity has been tightly woven by the Supreme Court over the last century. In 1869, in *Randall v. Brigham*, 7 Wall. 523, 537, 19 L.Ed. 285 (1869), the Court stated that judges are not responsible "to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation, unless perhaps where the acts are palpably in excess of the jurisdiction of the judges, and are done maliciously or corruptly." Over the years, the Supreme Court has removed most exceptions to the doctrine's coverage so that the present rule is that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction'". *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978), *quoting Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646 (1871). The immunity extends to complaints arising out of judicial conduct in criminal as well as civil suits. *See Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

The Supreme Court has been forthright in explaining the rationale for providing judicial acts with such extensive immunity.

As early as 1872, the Court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Stump v. Sparkman, supra*, 435 U.S. at 355, 98 S.Ct. at 1104, *quoting Bradley v. Fisher, supra*, at 347.

This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (*Scott v. Stansfield*, L.R. 3 Ex. 220, 223 (1868); quoted in *Bradley v. Fisher, supra*, 349, note, at 350.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.

*Pierson v. Ray, supra*, 386 U.S. at 553, 554, 87 S.Ct. at 1218.

Justice Brewer, sitting as a Circuit Judge in *Cooke v. Bangs*, 31 F. 640 (C.C.D. Minn. 1887), held that a justice of the peace was not subject to a civil action for false and malicious imprisonment even though his action in committing a person for contempt a second time, after his prior release on *habeas corpus*, was erroneous and alleged to have been malicious. In so ruling he set forth the classic reasons that supported his decision, and that are equally applicable today:

No man can be a good judge who does not feel perfectly free to follow the dictates of his own judgment wheresoever they may lead him. And in a country where the people rule, and where popular clamor is apt to sway the multitude, nothing is more important than that the judges should be kept as independent as possible. And it is universal experience, and the single voice of the law-books, that one thing essential to their independence is that they should not be exposed to a private action for damages for anything

that they may do as judges. It goes without saying that no man would feel free if he knew that, the moment that his decision was rendered, the party aggrieved, (for one party is always defeated,) construing his judgment to be based upon malice, or to be founded upon corruption, could bring him into the next court, and make him answer to an action for damages.

&ast; &ast; &ast; &ast; &ast; &ast;

With respect to all judicial officers,—justices of the peace, as well as judges of the higher courts,—the settled law of the supreme court of the United States, and I think the plain intimation of the supreme court of this state, is that, where they act within their jurisdiction, they are not amenable to any civil action for damages. No matter what their motives may be, they cannot be inquired into.

31 F. at 641–642.

Decisions of this circuit have uniformly applied this long settled doctrine. *See, e. g., Apton v. Wilson,* 165 U.S.App.D.C. 22, 506 F.2d 83 (D.C. Cir. 1974); *Owen v. Kronheim,* 113 U.S.App.D.C. 81, 304 F.2d 957 (D.C. Cir. 1962); *Spruill v. O'Toole,* 64 U.S. App.D.C. 85, 74 F.2d 559 (D.C. Cir. 1934). Judge Leventhal's recent opinion in *Apton v. Wilson, supra,* states the law substantially to the same effect:

> The judge is not liable for any injuries resulting from acts within his jurisdiction, and jurisdiction is construed broadly so that a judge will not be held liable unless he acts without color of authority. *See Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). The common law immunity of judges is fully applicable in suits under 42 U.S.C. § 1983 alleging deprivations of constitutional rights. *Pierson v. Ray,* 386 U.S. 547, 553–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

165 U.S.App.D.C. at 29, 506 F.2d at 90.

### III

Appellant's attempt to find a flaw in the doctrine is based on two contentions, either one of which, if answered in the negative, will defeat the immunity provided by the doctrine. First, he attempts to show that the judges lacked jurisdiction over the subject matter, and second, that the acts of which he complains were not performed in a judicial capacity. We disagree with both of appellant's contentions.

The Court in *Stump v. Sparkman, supra,* reasserted that the scope of the judge's jurisdiction must be construed broadly, and that a judge will be subject to liability only where he or she has acted in the clear absence of all jurisdiction. Even though defendant Judge Stump had untowardly granted a mother's petition for consent to sterilize her fifteen year old child, the majority of the Court found that the judge had not exceeded the general jurisdiction of his court. Granting the petition may have been contrary to the common law of the state and in violation of due process, the Court acknowledged, but the Court held that errors of law or procedure, however grave, do not expose a judge to civil liability. 435 U.S. at 356–59, 98 S.Ct. at 1104–1106.

The Court in *Stump* also discussed the principle that the absolute immunity of judges extends only to acts performed in their judicial capacities. Counsel in that case had contended that Judge Stump's approval of the minor child's sterilization was not a judicial act because the petition was not given a docket number, was not filed with the clerk's office, and was approved in an *ex parte* proceeding without notice to the minor, a hearing, or the appointment of a guardian ad litem. 435 U.S. at 360, 98 S.Ct. at 1106. The Court, however, stated that "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i. e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i. e.,* whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1107. The Court then found that approval of petitions relating to the affairs of minors was the type of act normally performed by a judge, and ruled that Judge Stump's act, however tragic, was protected by judicial immunity.

## IV

The facts in the instant case do not present the same moral dilemma faced by the Supreme Court in *Stump v. Sparkman*, nor is there any doubt that the defendant judges in this case are immune from the instant lawsuit. We note first that the Superior Court of the District of Columbia has general jurisdiction extending to all local criminal matters. 1973 D.C. Code § 11–923(b)(1). *See also Palmore v. United States*, 411 U.S. 389, 408–09, 93 S.Ct. 1670, 1681–1682, 36 L.Ed.2d 342 (1973).

Appellant does not, indeed cannot, dispute the general jurisdiction [6] of the Superior Court over his criminal proceeding, yet he claims that this jurisdiction was interrupted by an application for writ of mandamus that he filed in the District of Columbia Court of Appeals. However, the application for a writ of mandamus, even if filed before the court's rulings, does not deprive the trial court of its general jurisdiction over the appellant.

In *United States v. Hughes*, 388 F.2d 236, 239–40 (5th Cir. 1958), *vacated as moot*, 397 U.S. 93, 90 S.Ct. 817, 25 L.Ed.2d 77 (1970), the Fifth Circuit received a petition for a writ of mandamus concerning document production, and ordered further briefing and argument on the issue. Nevertheless, the court acknowledged that the trial court had simultaneous discretion to rule on the production of documents; in other words, the trial court had not lost its jurisdiction because the appellate court was entertaining an application for writ of mandamus. The fact that parties with applications for writs of mandamus in the appellate courts feel the need to request stays of trial court proceedings also reflects that a trial court does not lose its jurisdiction during the pendency of a writ of mandamus. *See e. g., Will v. United States*, 389 U.S. 90, 93, 88 S.Ct. 269, 272, 19 L.Ed.2d 305 (1967); *General Tire & Rubber Company v. Watkins*, 331 F.2d 192, 198–99 (4th Cir. 1964), *cert. denied*, 377 U.S. 952, 84 S.Ct. 1629, 12 L.Ed.2d 498 (1964). In conclusion, it cannot be maintained that the judges here acted "in the 'clear absence of all jurisdiction'". *Stump v. Sparkman, supra*, 435 U.S. at 357, 98 S.Ct. at 1105.[7]

Appellant also contends that the judges' rulings were non-judicial in nature. We disagree. Judge Taylor's disposition of three of appellant's motions can only be characterized as judicial action. Appellant's other complaint is contained in his allegation that Judge Revercomb failed to record the appearance of his counsel. However, if this was a duty of the judge, rather than the clerk, it is clearly judicial in nature and hence protected by judicial immunity.

We conclude that all of appellant's complaints involve functions normally performed by a judge, and at all times appellant was dealing with the defendants in their judicial capacities. Hence, appellant has failed to establish that there is any distinguishing factor to his case that would breach the expansive protection provided defendants by the doctrine of judicial immunity.

In conclusion we summarily affirm the order of the District Court dismissing appellant's complaint.

*Judgment accordingly.*

---

**6.** In *Owen v. Kronheim*, 113 U.S.App.D.C. 81, 304 F.2d 957 (D.C. Cir. 1962), this court also applied the doctrine of judicial immunity to a court of *limited* jurisdiction.

**7.** Justice Powell dissented in *Stump v. Sparkman, supra*, opining that where there is no opportunity to appeal from an adverse decision, as in that case's approval of an *ex parte* petition for sterilization, then there was less justification for depriving an individual of a direct remedy against the judge. 435 U.S. at 369, 98 S.Ct. at 1111.

In this case, appellant has the right to appeal any conviction that might result from the criminal proceeding without fear of the irremediable prejudice existing in *Stump v. Sparkman.*