Mr. Justice FIELD,
 

 after stating the case, delivered.the. opinion of the court, as follows:
 

 The, Sup'erior Court o'f Massachusetts is a court of general jurisdiction, and is empowered by statute to admit attorneys and counsellors to practise in the courts of the.State,-upon evidence of their possessing good moral character, and of having devoted a prescribed number of years to the study of the law, in the office of some attorney in the State, and ,to remove them “for any deceit, malpractice, or other gross' misconduct;”
 

 Both the admission and the removal 'of attorneys are judicial acts. It has been so decided in. repeated instances. It was declared in
 
 Ex parte Secombe,
 

 ǁ
 

 and was affirmed in
 
 Ex parte
 
 Garland.
 
 ¶
 

 Now, it is a general principle applicable to all judicial ¡officers, that they are not liable to a civil action for any judicial act done within their jurisdiction. In reference to judges of limited and inferior authority, it has been held
 
 *536
 
 that they are protected only when they act within their ju risdiction. If this be the case with respect to them, no such ' limitation-exists with respect td judges of superior or general authority. They are not liable to civil adtions for their judicial acts, even when such acts are in excess of their jurisdiction, unless perhaps where the acts, in excess of jurisdiction, are done maliciously or corruptly. This doctrine is as old as the law, and its maintenance is essential to the impartial administration of justice; Any other doctrine would hecessarily lead to the degradation of the judicial authority and the destruction of its usefulness. Unless judges, in administering justice, are uninfluenced by considerations personal to themselves, they can afford little protection to the citizen in his person or property. And uninfluenced by such con- , siderations they cannot be, if, whenever they err in jttdgment as to their jurisdiction, upon the nature and extent of which they are constantly required to pass, they may be subjected to prosecution at the instance of every party imagining him- ' self aggrieved, and be called upon in a civil action in another tribunal, and perhaps before an inferior judge, to vindicate their acts.
 

 This exemption from civil action is for the sake of the .pu'blic, and not merely for the protection of the judge. And it has been maintained by a uniform course of decisions in England for centuries, and in this country ever since its settlement.
 

 In England the superior judges are the delegates of the king. Through them fye administers justice, and to him alone are they accountable for the performance of their trust. And it was said as long ago as 1608, as reported by Lord Coke in Floyd and Barker’s case,
 
 *
 
 that insomuch as the judges of the realm have the administration of justice, under the king, to all his subjects, they ought not to be called in question for any judicial proceedings by them, excepbefore the king himself, “for this would tend-to the scandal and subversion'of all justice; and those who are most sincere. would not be free from continual calumniations.”
 

 
 *537
 
 In the United States, judicial power is vesteá exclusively in the courts. The judges administer justice therein for. the people, and are responsible to the people alone for the manner in which they perform their duties. If faithless, if corrupt, if dishonest, if partial, if oppressive or arbitrary, they may be called to account by impeachment, and removed from office. In some States, aud Massachusetts' is one of them, they may be removed upon the address of both houses of the legislature. . But responsible they are not to private parties in civil actions for their judicial acts,'however, injurious. may be those acts, and' however much othey may deservecondemnation,,unless perhaps where the acts are palpably in excess of the jurisdiction oPthe judges, and are done maliciously or corruptly.
 

 In
 
 Taaffe
 
 v.
 
 Downes
 

 *
 

 this subject was most elaborately,and learnedly considered, and all the English authorities commented upon, by the Court of Common Pleas of Ireland, in 1813., The defendant was chief justice of the- King’s Bench in Ireland’, and had issued a warrant at chambers for the arrest of the plaintiff for a breach of the- peace.' The .plaintiff was accordingly arrested' and held to bail; and he afterwards brought án action against the chief justice for assault and false imprisonment. It was urged, in argument, that it was not lawful or defensible for a judge, without any '-offence committed, or charge made upon oath of crime, or suspicion of crime committed, to imprison a subject. But it was held'-that the action' would not' .lie against the judge for-acts judicially done by him. “Liability,” said Mr. Justice Mayne, one of the justices of the court,.“ to every man’s action, for every judicial, act a .judge is called upon to do, is' the degradation of the judge, and cannot be.the object of any true patriot or honest subject. It is to render the judges slaves in, every court that holds-plea, to every sheriff,-juror, attorney, and plaintiff/ ■ If you once breakdown the barrier . of-their dignity, and subject them to an action, you let in .upon the judicial authority a wide, wasting, and harassing
 
 *538
 
 pef'secution, and establish its weakness in a degrading ré-' sponsibility.” And the justice observed that no action of the kind was ever sustained, and save one in London and one in-Ireland, none was ever attempted. The one meu;tioned as arising in Ireland was not against any judges, but against the governor of the country, and may perhaps be subject to other considerations. In the case in London,
 
 *
 
 the action, was "against the recorder, who, as one of the judges of
 
 oyer and terminer,
 
 had fined and imprisoned a petit jury for rendering a verdict against the direction of the court and the, evidence. This act was declared illegal, by the Court of Common Pleas, in discussing the ease on
 
 habeas
 
 corpus.
 
 †
 
 "Upon that decision the action was brought by one of the jurors, but the court held that the action would not lie, and were df opinion “ that the bringing of the action was a greater offence than the fining of the plaintiff, and committing of him for non-payment; and that it was a bold attempt, both against the government and justice in general.”
 

 Mr. Justice Fox, in the case óf
 
 Taaffe
 
 v.
 
 Downes,
 
 conceded that the act of the-chief justice-was'illegal,.but held that.he ■was pot,responsible in the action, and observed that, without the existence of the principle, that a judge, administering justice,,shall not be liable for acts judicially done, by aGtion or prosecution, it was utterly impossible that there should be such a dispensation of justice as would have the effect of protecting the' lives or property of the subject. - “ There is something,” he said,
 
 “
 
 so monstVous in-the contrary doctrine, that it would poison the very source of justice, and introduce a system of servility, utterly inconsistent with the constitutional independence of the judges, an independence which it has been the work of ages to establish, and would be utterly inconsistent with the preservation of the rights and liberties of the subject.”
 

 The same subject was considered very elaborately in the ease of Yates v.
 
 Lansing,
 

 ‡
 

 in the Supreme Court and in the
 
 *539
 
 Court'of Errors of New York. Lansing was chancellor of the State, ánd had committed Yates, one of the officers in chancery, for malpractice and contempt. A judge of the Supreme 'Court discharged him, and thereupon the chancellor ordered him to be recommitted. ' He then brought an 'action to recover a statute penalty for the recommittent. It was held'that the action would not lie, Mr. Chief Justice Kent observing that the'chancellor may have erred in'judgment in calling an act a contempt which did not amount' to one, and in regarding a discharge' as null when it was binding, and dhat the Supreme Court may have er.’éd in the; same way, but 'still it was but an error of judgment-for which neither the chancellor nor the judges were or could- be responsible in a civil action, and that such responsibility would ' be an anomaly- in jurisprudence. “Whenever,” said the learned chief justicfe,'“ we subject the established cóurts of the land to'the degradation of privaté prosecution, wo subdue their independence and destroy their authority.-' Instead of being venerable before the, public they become contemptible.” ' '
 

 The Superior Court of Massachusetts, as we have: already stated, is a court of general jurisdiction, and is clothed by statute with authority to admit and to remove attorneys-at-law. The'order removing the plaintiff ,was "made by the court, and not by the judge in chambers. The inquiry into his conduct was before the court, and before .it he was'notified to appear. His claim is that the court -never- acquired jurisdiction to act'in his case, be'ckuse théré was not a formal accusation made against him, or statement of grounds of complaint, and formal citation issued to him to answer them.' If this were so, his case would not be advanced.-. Under the1 authorities cited he could not seek redress in that event by an action against the judge of the court, there being uo pretence or shadow óf ground that he acted maliciously or corruptly. But the claim of the plaintiff is not correct. The information imparted by the letter was sufficient to put in motion the authority of the court, and the notice to the plaintiff* was sufficient to bring him before it to explain the
 
 *540
 
 transaction to which the letter referred. The informality of the notice, or
 
 of the
 
 complaint by the letter, did not touch the question of jurisdiction. The plaintiff.understood from them the nature of the charge against him; and it is not pretended that the investigation which followed was not conducted with entire fairness. He was afforded ample oppor-' tunity to explain the transaction and vindicate his conduct. He introduced testimony upon the matter, and was sworn himself.
 

 It is not necessary that proceedings against' attorneys for malpractice, or any unprofessional conduct, should be founded upon formal allegations against them. Such proceedings are often instituted upon information developed in the prog-. ress of ■ a cause; or from what the court learns' of- the conduct of the attorney from its own observation. Sometimes they are moved by third .parties upon affidavit; and some-times they are taken by the court upon its own motion. All that is requisite to their validity is that,, when not taken for matters occurring in open court, in the presence of the judges^ notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence. The manner in which the proceeding shall be con-ducted, so That it be without oppression or-unfairness, is a matter of judicial regulation.
 

 The authority of the court over its attorneys and counsellors is of the highest importance. Theymonstitute a profession essential to society. Thleir aid is required not merely .to represent suitors before the courts, but in the more difficult transactions of private life. The highest interests are placed in their hands, and confided to their management.' The confidence which they receive and the responsibilities which they are obliged to assume demand not only ability of a high order, but the strictest, integrity., The authority which the courts hold over them, and the qualifications re quired for their admission, are intended to secure those qualities.
 

 The position that the plaintiff has been-illegally deprived of rights which he held under the constitution of Massachu
 
 *541
 
 setts, which declares that “ no subject shall be held to answer for any crime or offence, until the same is fully and plainly, substantially and formally, described to him; ” nor be “ despoiled or deprived of his property, immunities or privileges, put out of the protection of the law, exiled or deprived of his life, liberty or estate, but by the judgment of his peers, or the law of the land,”
 
 *
 
 is answered by the construction which the Supreme Court of that State has given to these provisions. It has held that the proceeding taken for the removal of the plaintiff could not in any just and proper sense be deemed a criminal procedure; in which a party ha? a right to a full, formal, and substantial description of the offence charged; and that it was not essential to the validity of the order of removal that it should be founded on legal process according to the signification of the words'“per
 
 legem terree
 
 ” as used in Magna Charta, or in the Declaration of Rigbts.
 
 †
 
 This construction of the highest court of the State, not called in question by.any conflicting decision of that court, is conclusive upon us.
 
 ‡
 

 We find no error in the ruling of the Circuit Court, and its judgment must therefore be
 

 Affirmed.
 

 ǁ
 

 19 Howard, 9.
 

 ¶
 

 4 Wall. 378
 

 *
 

 12 Coke, 25.
 

 *
 

 Given in a note in 3 Moore’s Privy Council, 41.
 

 *
 

 Hamond v. Howell, 1 Modern, 184; 2 Id. 218.
 

 †
 

 Bushell’s Case, Vaughan, 135.
 

 ‡
 

 5 Johnson, 283; 9 Id. 395.
 

 *
 

 Declaration of Rights, Art. 12.
 

 †
 

 Randall, Petitioner for Mandamus, 11 Allen, 473.
 

 ‡
 

 Provident Institution
 
 v.
 
 Massachusetts, 6 Wallace, 630.