W. James BROWN, an attorney, on behalf of himself and all others similarly situated, Plaintiff,

v.

Frank J. McGARR, Chief Judge of the United States District Court for the Northern District of Illinois, the Judicial Conference of the United States, Richard W. Austin, in his capacity as chairperson of the District Admissions Committee, and H. Stuart Cunningham, Clerk of the United States District Court, Defendants.

No. 83-C-1267.

United States District Court, N.D. Illinois, E.D.

March 20, 1984.

Edward T. Graney, Chicago, Ill., for plaintiff.

Keith C. Syfert, Asst. U.S. Atty., Chicago, Ill., for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

This is an action challenging the constitutionality of recently adopted local rules for the District Court for the Northern District of Illinois. The plaintiff alleges that the defendants denied him his fifth amendment right to due process by not giving him notice and a hearing before establishing requirements for admission to a newly-created trial bar. The defendants have moved to dismiss certain defendants and for summary judgment upholding the rules. Because the defendants' summary judgment motion will be granted, I need not reach the issue whether all defendants are properly joined.

On July 12, 1982, the District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §§ 1654, 2071 and Rule 83, Federal Rules of Civil Procedure, adopted rules creating a trial bar. Under the new rules, any member in good standing of the Illinois bar may be admitted to the federal bar (Rule 3.00(A)). Any member of the federal bar may enter appearances, file pleadings, motions and other documents, sign stipulations, and receive payments upon judgments, decrees or orders. (Rule 3.10(A)). Only members of the newly-created trial bar, however, may conduct testimonial proceedings alone or represent a defendant in a criminal proceeding. Nonmembers of the trial bar may appear in these matters only if accompanied by advising members of the trial bar.

In order to be eligible for trial bar membership, an attorney must have four "units" of trial-type experience. (Rule 3.00(C)(7)). An attorney may receive a unit for participating as lead or co-counsel at a trial, observing an experienced trial attorney who consults with the observer, or participating in an approved law school trial advocacy course. Two of the four qualifying units must involve the attorney's participation as lead or co-counsel. To qualify, trial experience must involve substantial testimonial proceedings in state court or in federal court before a district judge, bankruptcy judge or magistrate. Experience before an administrative law judge may also qualify if approved by the district admissions committee. (Rule 3.00). The new rules also impose a $25 fee for trial bar admission.

The plaintiff had been admitted to the federal bar for the Northern District of Illinois in 1977. However, he does not yet possess sufficient trial experience to be eligible for the new trial bar membership. When originally admitted to the federal bar in 1977, the plaintiff was authorized to appear alone at testimonial and criminal proceedings; as a result of the new rules, he may no longer do so.

The plaintiff challenges the new rules as violative of his fifth amendment right to due process. He alleges four constitutional deficiencies: (1) he received no actual notice that his right to appear alone at testimonial and criminal proceedings would be revoked, (2) he was not given an opportunity to be heard, (3) the court lacked authority to require a $25 fee for admission to the trial bar, and (4) when admitted to the federal bar in 1977, he was not warned that his admission was limited in time or purpose.

Before considering his constitutional challenges to the new rules, I will address the issue of the plaintiff's standing to contest the imposition of a $25 admission fee for members of the trial bar. The case and controversy clause of article III of the Constitution requires that the plaintiff "allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). That the plaintiff is ineligible for trial bar membership and, therefore, not liable for the $25 fee, is a premise of this lawsuit. Because his allegations necessarily place him outside the class of attorneys who are required to pay the $25 fee, the plaintiff can show no injury to himself caused by its imposition. The issue of the legality of the $25 fee is, therefore, not properly before me, and I shall not decide it.

The plaintiff argues that his fifth amendment due process right was violated because he was not personally notified and given a hearing before the new trial bar rules were adopted by the District Court for the Northern District of Illinois. He also contends in his brief that the rules themselves are inconsistent with due process because they impermissibly presume that trial competency can be acquired only through trial experience. Thus, the plaintiff attacks the rules on both procedural and substantive due process grounds.

## PROCEDURAL DUE PROCESS

The primary purpose of the fifth amendment's due process clause is to protect the individual citizen from the arbitrary exercise of power by the government. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Application of Gault*, 387 U.S. 1, 20, 87 S.Ct. 1428, 1439, 18 L.Ed.2d 527 (1967). When an individual's rights are being determined in a judicial or quasi-judicial proceeding, due process requires that the individual be given notice and afforded an opportunity to be heard. *Mathews*, 424 U.S. at 333, 96 S.Ct. at 901; *Goldberg v. Kelly*, 397 U.S.

254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). These rights accrue in the context of "proceedings designed to adjudicate disputed facts in particular cases...." *United States v. Florida East Coast Co.*, 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973); see also *Gray Panthers v. Schweiker*, 652 F.2d 146, 155 n. 18 (D.C.Cir.1980). If the plaintiff should contest the Northern District admissions committee's *application* of the new rules to himself, claiming eligibility for admission under the rules, he would no doubt be entitled to notice and a hearing.

In the context of rulemaking, however, the fifth amendment's requirements of individualized due process do not apply. *Florida East Coast Co., supra; Bi-Metallic Co. v. Colorado*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); *Gray Panthers v. Schweiker*, 652 F.2d at 155 n. 18; *Sima Products Corp. v. McLucas*, 460 F.Supp. 128, 133–34 (N.D.Ill.1978), aff'd 612 F.2d 309 (7th Cir.1980), cert. denied 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980); Tribe, American Constitutional Law, § 10–8, p. 514 (ed. 1978). The reasons for this limitation on individualized due process were explained by the Supreme Court in *Bi-Metallic Co., supra*, a case involving an increase in property valuation by a state administrative taxing agency:

Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

*Bi-Metallic Co.*, 239 U.S. at 445, 36 S.Ct. at 142; Accord, *Florida East Coast Co.*, 410 U.S. at 224, 93 S.Ct. at 810 (due

process does not require the ICC to hold hearings when setting freight rates).

The exclusion of large groups from the scope of due process protections is not justified on practical grounds alone: "We may expect that as the sweep of governmental action broadens, so too does the power of the affected group to protect its interests outside rigid constitutionally imposed procedures." *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 800, 100 S.Ct. 2467, 2483, 65 L.Ed.2d 506 (1980). (J. Blackmun concurring). The new district court rules establishing a trial bar affect thousands of present and future Chicago-area attorneys. It is difficult to imagine a group better able to look after its interests.

Having determined that the due process clause did not entitle the plaintiff to notice and a hearing, I will now consider whether the district court's adoption of the trial bar rules violated the due process clause in any other manner. In the case of administrative agencies, it is usual for Congress to accompany its grant of rulemaking authority with procedural safeguards regulating the exercise of that authority; the most prominent example of such safeguards is the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 et seq. Although neither the APA nor any other procedural statute is specifically applicable to the exercise of rulemaking authority by the district court, these statutes are relevant to the extent that they have been accorded constitutional significance.

Under the APA, rulemaking is "informal" if it is not required by statute to be done "on the record." An agency making an informal rule must provide "interested persons an opportunity to participate in the rulemaking through submission of written data, views or arguments." 5 U.S.C. § 553(c). Formal rulemaking involves a trial-type evidentiary hearing. 5 U.S.C. §§ 553, 556–7. Because these and similar provisions in other statutes establish procedures intended to protect the rights of persons affected by bureaucratic action, courts in some instances have identified the statutes' procedural safeguards with fifth amendment due process requirements, *Sierra Club v. Costle*, 657 F.2d 298, 392 n. 462 (D.C.Cir.1981); *Gray Panthers v. Schweiker*, 652 F.2d at 155 n. 18 (D.C.Cir. 1980). However, Supreme Court pronouncements on the subject cast doubt on the theoretical soundness of this identification. *Bowles v. Willingham*, 321 U.S. 503, 519, 64 S.Ct. 641, 649, 88 L.Ed. 892 (1944); *Pacific States Co. v. White*, 296 U.S. 176, 185–6, 56 S.Ct. 159, 163–4, 82 L.Ed. 138 (1935); see also K. Davis, Administrative Law § 6:1, p. 449 (2d ed. 1978).

Even assuming that the Constitution mandates APA-type safeguards on the exercise of delegated legislative authority by administrative agencies, I do not believe that the due process clause similarly restrains the district court in the exercise of its authority to regulate the admissions of attorneys who appear before it. The special status of the courts and the nature of the power being exercised justify the distinction.

When a federal administrative agency makes rules, it performs a legislative function, implementing a broad national policy set by Congress and stated in the statute creating the agency. The setting of national policy is preeminently a function of the representative branch of government. Congress, of course, need not follow any procedure before acting because its responsiveness to the popular will is assured by the electoral process. Because administrative agencies are not directly answerable to the electorate, procedural safeguards such as are found in the APA are necessary in order to inject the popular voice into the making of policy decisions that would otherwise be made solely by bureaucrats. Just as it is proper that broad policies be set by the representative branch of government, it is also proper that there be a public component in the making of rules implementing those policies.

The subject matter of the rules in the case at bar, however, places them outside the legislative sphere: "Both the admission and the removal of attorneys are judicial acts. It has been so decided in repeated

instances." *Randall v. Brigham*, 74 U.S. 523, 535, 7 Wall. 523, 535, 19 L.Ed. 285 (1868). That the court's admission of attorneys is here regulated by rules does not change the judicial nature of the court's act. The *Randall* court's justification of judicial control over attorneys has lost none of its validity:

> The authority of the court over its attorneys and counselors is of the highest importance. They constitute a profession essential to society. Their aid is required not merely to represent suitors before the courts, but in the more difficult transactions of private life. The highest interests are placed in their hands and confided to their management. The confidence which they receive and the responsibilities which they are obliged to assume demand not only ability of a high order, but the strictest integrity. The authority which courts hold over them, and the qualifications required for their admission, are intended to secure those qualities.

Id., at 540, 7 Wall. at 540.

Although delegated by Congress, the authority which the District Court for the Northern district of Illinois exercised here differs from authority delegated to administrative agencies in that it is uniquely within the judiciary's competence and implements no national policy set by Congress. Rather, the delegated authority is necessary to the smooth and independent functioning of the courts. Procedural safeguards over rulemaking by administrative agencies serve the interest of public participation in national policy decisions. Because this interest is not at stake when a court exercises its authority to control the admission of attorneys, no procedural safeguards are required.

■ The procedures which culminated in the adoption of the rules challenged here were thorough and well designed to assure a fair result. In 1976, at the instance of the United States Judicial Conference, the Devitt Committee was appointed to study possible ways to improve the standard of advocacy in the federal courts. The com-

mittee conducted a lengthy inquiry which included a survey of the legal community's views and four public hearings. The Devitt Committee published its first report in 1978. *Report and Tentative Recommendations*, 79 F.R.D. 187 (1978). Additional hearings were held on the first report and a final report was issued which recommended rules similar to those adopted in the Northern District of Illinois. *Final Report*, 83 F.R.D. 215 (1979).

The District Court for the Northern District of Illinois appointed the Austin Committee to implement the Devitt Committee's recommendations. The Austin Committee published proposed rules in the March 26, 1981, issue of the Chicago Law Bulletin and in the March-April 1981 issue of the Chicago Bar Record, and invited interested parties to submit their views. All interested attorneys were invited to attend and participate in an open meeting on the proposed rules held on April 26, 1981. The Austin Committee issued its final report on November 30, 1981. The District Court for the Northern District of Illinois adopted the rules on July 12, 1982.

Under the broadest possible interpretation of the due process clause, procedural safeguards are required whenever group or individual rights are affected. Although I have explained why I believe this interpretation to be erroneous, I do not doubt that, were it correct, the rules challenged here would pass constitutional muster. The plaintiff's interests were protected because the procedure followed was elaborate and fair.

### SUBSTANTIVE DUE PROCESS

Since the challenged rules creating a trial bar do not involve a suspect classification or infringe a fundamental right, it remains only to determine whether the rules are within the district court's authority and whether the rules' requirements are "rationally related to the applicant's fitness to practice law in the court where he seeks admission." *Matter of Roberts*, 682 F.2d 105, 108 (3d Cir.1982); cf. *Schware v.*

*Board of Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

The sources of the district court's authority to make the rules which the plaintiff challenges are 28 U.S.C. §§ 1654, 2071 and Rule 83, Federal Rules of Civil Procedure:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.
28 U.S.C. § 2071.

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.
28 U.S.C. § 1654

Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court of the United States. In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.
Rule 83, Federal Rules of Civil Procedure.

Every federal court which has construed these provisions has held that they permit a federal district court to regulate the admission of the attorneys who practice before it. *Matter of Roberts, supra; Matter of Abrams,* 521 F.2d 1094, 1099 (3d Cir. 1975), cert. denied 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975); *Sanders v. Russell,* 401 F.2d 241 (5th Cir.1968); *Galahad v. Weinshienk,* 555 F.Supp. 1201, 1204 (D.Colo.1983); *Lark v. West,* 182 F.Supp. 794 (D.D.C.1960), aff'd, 289 F.2d 898 (D.C. Cir.), cert. denied, 368 U.S. 865, 82 S.Ct. 114, 7 L.Ed.2d 63 (1961).

It is clear that district courts have the authority to regulate the admissions of attorneys; it follows that courts must be able to exercise this authority independently. The statutes do not foreclose a district court from setting standards for the admission of attorneys which are higher than the admission standards set by other federal district or state courts. The district court for the Northern District of Illinois exercised precisely this authority when it adopted rules requiring a measure of trial experience for admission to the district trial bar.

As amply evidenced by the legal authorities cited above, the maintenance of high standards of advocacy is a legitimate government objective uniquely within the judicial sphere of competence. Just how high these standards may be without exceeding the heretofore recognized sphere of judicial control over attorneys is uncertain. The permissible governmental interest in guaranteeing the competence of attorneys presumably cannot sustain federal court admission rules which are so strict as to distort the concept of attorney competence beyond recognition. Moreover, at some point on a scale of standards, sixth amendment interests would be implicated. I am convinced, however, that the rules challenged here are not so restrictive as to fall outside the area of judicial control which Congress intended to acknowledge in 28 U.S.C. §§ 1654 and 2071.

The challenged rules are narrowly drawn so as not to restrict lawyers except in the targeted area of trial advocacy. The sole infringement of attorney practice is the requirement that an attorney have four units of trial-type experience before being permitted to conduct trial proceedings unassisted. Four units of experience as defined by the rules are not excessive. An attorney can obtain such experience in a variety of ways, including even a law school trial advocacy course.

█ It is undoubtedly true that some attorneys without four units of trial-type experience are competent to conduct trial proceedings unassisted, while other attorneys with abundant trial experience are not

competent to do so. This does not, however, render the trial bar rules unconstitutional, as the plaintiff argues. The Constitution may not reasonably be construed to require that the rules infallibly identify competent attorneys; it is enough if the rules are rationally related to their legitimate objective of maintaining a high standard of advocacy in the district court. Since an experienced attorney undoubtedly is more likely than an inexperienced attorney to be a competent trial practitioner, I find that the trial bar rules are rationally related to their legitimate objective and, therefore, substantially consistent with the due process clause of the fifth amendment.

### CONCLUSION

The plaintiff's arguments are constitutionally flawed. I do not doubt that the rules have deprived the plaintiff of a right; countless government regulations intrude upon citizens' rights. The issue is whether the District Court for the Northern District of Illinois infringed the plaintiff's right in an unlawful manner. My examination of the relevant statutes and constitutional principles convinces me that the challenged rules establishing a trial bar are a valid exercise of the district court's authority under 28 U.S.C. §§ 1654, 2071 and Rule 83, Federal Rules of Civil Procedure.

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the defendants' motion to dismiss certain of the defendants be and hereby is dismissed.

IT IS FURTHER ORDERED that this action be and hereby is dismissed.