W. James BROWN, an attorney on be-
half of himself and all others
similarly situated, Plaintiff-Appellant,

v.

Frank J. McGARR, Chief Judge of the
United States District Court for the
Northern District of Illinois, et al., De-
fendants-Appellees.

No. 84–1591.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1985.

Decided Oct. 3, 1985.

Rehearing and Rehearing In Banc
Denied Oct. 31, 1985.

Edward T. Garney, Chicago, Ill., for plaintiff-appellant.

Nancy K. Needles, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before CUDAHY and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

·COFFEY, Circuit Judge.

The plaintiff, James Brown, appeals the district court's holding that the Northern District of Illinois' adoption of rules creating a trial bar to improve advocacy in the federal courts and to supervise the practice of law did not deprive him of property without due process of law. We AFFIRM.

I

The district court made the following findings of fact when granting the defendants' summary judgment motion and they are not in dispute. As part of a study of the competency of trial lawyers practicing in the federal counts, the Devitt Committee, appointed by Chief Justice Burger, surveyed the legal community and held public hearings around the country. The Devitt Committee published two reports of its findings and, in both reports, recommended, *inter alia,* that federal district courts impose a rule requiring attorneys to have trial experience before being allowed to appear alone in trials. The District Court for the Northern District of Illinois appointed an advisory committee, the Austin Committee, to implement the Devitt Committee's recommendations as part of a pilot program to improve the quality of advocacy in the federal courts. The Austin Committee published the proposed rules in

the Chicago Law Bulletin and the Chicago Bar Record and held a public meeting on the proposed rules. On July 12, 1982, after this extensive period of public examination and comment, the District Court for the Northern District of Illinois adopted rules requiring attorneys to belong to a "trial bar" before being allowed to appear alone either on behalf of a defendant in a criminal proceeding or during testimonial proceedings in a civil case. The requirement of membership in the trial bar applies both to new admittees and to attorneys previously admitted to the bar of the Northern District of Illinois. In order to practice before the court as a member of the trial bar, an attorney must have four "qualifying units" of trial-type experience. N.D.Ill. General R. 3.00C(7). An attorney may receive a qualifying unit for participating as lead or as co-counsel at a trial, observing a trial in which a member of the trial bar supervises the observation, or participating in an approved trial advocacy course.[1] *Id.*

at C. At least two of the four qualifying units must be obtained by participating in actual trials as lead or as co-counsel. *Id.* at C(7). The court may, in exceptional circumstances, waive the trial bar membership requirement if the client consents to representation by a non-member.[2] *Id.* at 3.10D. Prior to the adoption of the rules creating the trial bar, any member in good standing of the Northern District of Illinois Bar could appear alone in any proceeding.

The plaintiff, James Brown, was admitted to the bar of the Northern District of Illinois in 1977 but does not possess a sufficient amount of trial experience to be eligible for trial bar membership. After the rules were adopted, the plaintiff filed suit as a representative of a class of attorneys deprived of the right to appear in all proceedings without assistance, alleging that the rules of the Northern District of Illinois violated the Fifth Amendment prohibition against deprivation of property without due process of law. Because the subject mat-

---

1. Rule 3.00C provides:

"C. Definitions

(1) Testimonial proceedings: Testimonial proceedings are proceedings conducted in open court before a District judge, U.S. magistrate, bankruptcy judge or trial judge of the state court in which the oral testimony of a witness is presented and the rules of evidence are applicable. Procedures limited to taking the deposition of a witness do not constitute testimonial proceedings for purposes of this Rule.

(2) Qualifying trial: A qualifying trial is either (a) a trial lasting at least one day in a trial court of record, involving substantial testimonial proceedings and going to the merits, or (b) an evidentiary hearing before a trial court of record equivalent to a trial in which testimonial evidence going to the merits is taken.

(3) Participation unit: A person is credited with one participation unit for each qualifying trial in which he/she participates as the lead counsel or the assistant to the lead counsel. Where a qualifying trial lasts more than three days, the person is credited with one additional participation unit for each three full days of trial in excess of the first three days. A maximum of four participation units can be credited for one trial.

(4) Observation unit: A person is credited with one observation unit for each qualifying trial he/she observes in which a member of the trial bar of this Court supervises the obser-

vation and consults with the person about the trial.

(5) Simulation unit: A person is credited with a simulation unit where, as part of a law school or continuing education course, he/she satisfactorily participates in a simulated trial that is recognized by the District Admissions Committee as being adequately supervised. The supervisor of the simulated trial may certify that the person's performance was satisfactory.

(6) Qualifying units of trial experience: Participation units, observation units and simulation units as defined in this Rule are qualifying units of trial experience.

(7) Required trial experience: Required trial experience consists of four qualifying units of trial experience, at least two of which are participation units."

2. Rule 3.10D provides:

"D. Waiver and Exceptional Cases

A judge may grant permission in a civil or criminal proceeding pending before him/her to an attorney admitted to the bar, but not to the trial bar, to appear alone in any aspect of the matter only upon written request by the client and a showing that the interests of justice are best served by waiving the experience requirements otherwise required by these Rules. Such permission shall apply only to the proceeding in which it was granted. Granting of such permission shall be limited to exceptional circumstances."

ter of the complaint involved rules adopted by the Judges of the Northern District of Illinois, the case was reassigned to Senior Judge Myron L. Gordon of the Eastern District of Wisconsin. Judge Gordon held, 583 F.Supp. 734, in ruling on the defendants' motion for summary judgment, that the rules violated neither the plaintiffs' rights to substantive nor to procedural due process.

## II

Brown asserts that the creation of the Federal Trial Bar of the Northern District of Illinois, in effect, disbarred him and that he had a due process right to "notice calculated to convey information regarding his disbarment pursuant to the adoption of the rules and an opportunity to defend against such action." Brown also argues that neither the district court's power to specify bar admission standards, nor its power to disbar attorneys for "deceit, malpractice, or other gross misconduct," nor its power to make or amend rules authorize the court to deny an attorney his "vested right to practice law" ("a property right in his law license") without affording the attorney "his due process rights to a hearing, to present evidence, to cross examine adverse witnesses, and to know upon what basis the defendants determined that they and other individuals of the class were not qualified to be trial attorneys." Moreover, the plaintiff contends that not only the district court but also Congress lacked the authority to promulgate the rules creating the trial bar because the class' "previously granted licenses to practice and to try cases in the federal district court for the Northern District of Illinois may not be retroactively limited." Finally, the plaintiff asserts that, even if the district court's adoption of the rules involves a "basically legislative-type judgment," our court should not apply the rule that "the fifth amendment's requirements of individualized due process do not apply in the area of rulemaking."

### A. Adoption of the Rules was not a Disbarment Proceeding

■ By arguing that adoption of the trial bar membership rule in effect dis-

barred him for incompetence, Brown raises the issue of whether the imposition of the trial bar membership requirement was a proper exercise of the district court's rulemaking power or was an improper adjudication of his competence as an attorney. To determine whether an action was rulemaking or adjudication, courts consider: (1) whether the action is generalized in nature, i.e., whether the action applies to specific individuals or to unnamed and unspecified persons; (2) whether the promulgating agency considers general facts or adjudicates a particular set of disputed facts; and (3) whether the action determines policy issues or resolves a specific dispute between particular parties. *See United States v. Florida E. Coast R.R. Co.*, 410 U.S. 224, 244–46, 93 S.Ct. 810, 820–21, 35 L.Ed.2d 223 (1973). "Disbarment ... is a punishment or penalty imposed on the lawyer." *Matter of Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968). A court conducting a disbarment proceeding must determine for itself the facts of the attorney's conduct and whether that conduct had been so grievous as to require disbarment. *Theard v. United States*, 354 U.S. 278, 282, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957). Thus, the ultimate result of a disbarment proceeding is a finding, based upon the conduct and actions of an individual attorney, that the individual attorney is unfit. Unlike a disbarment proceeding focused upon specific incidents of misconduct by an individual attorney, the district court's trial bar rules were adopted in response to fact finding that was not focused on individual attorneys. The trial bar rules of the Northern District of Illinois are part of a pilot program implementing suggestions to improve advocacy in the federal courts advanced by the Committee to Consider Standards for Admission to Practice in the Federal Courts ("Devitt Committee"). The Devitt Committee, a national committee appointed by Chief Justice Burger in 1976 to study advocacy of representation problems in the federal courts, surveyed 1,500 law related or-

ganizations, solicited the comments of the legal community, and held public hearings on, *inter alia,* causes of any perceived inadequacies of representation. *Report and Tentative Recommendations of the Committee to Consider Standards of Admission to Practice in the Federal Courts to the Judicial Conference of the United States,* 79 F.R.D. 187, 193 (1978). Additionally, the Federal Judicial Center simultaneously conducted a series of research projects designed to gather information about the level of performance of advocates in the federal courts. *Id.* Based upon the comments received by the Devitt Committee and the results of the Federal Judicial Center studies, the Devitt Committee concluded that, "lawyers without previous trial experience are much more likely to turn in inadequate performances and are less likely to turn in very good or first rate performances, and it permits the inference that experience improves the quality of performance." *Id.* at 196–97. The experience requirement was recommended "to insure a substantial probability of adequate trial performances." *Id.* at 196–98. Thus, the trial bar membership requirement was not designed to infallibly identify competent attorneys; rather, the provision was adopted as a method of improving the standard of advocacy in the district courts by requiring the attorneys to present evidence to the court of training in trial advocacy— i.e., the qualifying units. We hold that the finding of a correlation between trial experience and competence as a trial attorney, upon which the trial bar membership rule is based, is generalized fact finding, was not focused upon the competence of an individual attorney, and was legislative in nature. We also hold that the experience requirement is a determination of a policy issue rather than a resolution of a specific dispute between particular parties. Specifically, the trial bar membership requirement was adopted to prevent problems caused by inexperienced trial counsel such as, " 'Piper Cub' advocates trying to handle the controls of 'Boeing 747' litigation," and "on-the-job-training" at the expense of the client. Burger, *The Specialized Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice?* 42 Fordham L.Rev. 227, 231, 233 (1973). "Whatever the legal issues or claims, the indispensable element in the trial of a case is a minimally adequate advocate for *each* litigant." *Id.* at 234 (emphasis added). The client's interests are ill-served when an untrained attorney faces a seasoned and experienced opponent. "The young doctor just graduated from the finest medical school is not permitted to take scalpel in hand to perform delicate surgery without a skilled and seasoned surgeon at his side." Kaufman, *The Court Needs a Friend in Court,* 60 A.B. A.J. 175, 177 (1974). Adoption of an experience requirement is a sound, and overdue, recognition that young attorneys, like young physicians, must be trained by experienced practitioners. Brown's argument that the district court's imposition of the trial bar membership requirement, in effect, disbarred him for incompetence mischaracterizes the nature of the district court's action. We hold that, contrary to the plaintiff's assertions of disbarment, the district court's trial bar membership rule, imposes what we believe is a necessary and long needed qualification requirement upon present and future members of the district court bar who wish to have the opportunity to appear alone before the court in any proceeding and is not a finding that non-members of the trial bar are incompetent. Consequently, Brown's argument that he was entitled to notice and the right to be heard because he was disbarred is groundless.

### B. The Power to Impose the Qualification Requirement

■ The authority to adopt rules relating to admission to practice before the federal courts was delegated by Congress to the federal courts in Section 35 of the Judiciary Act of 1789, Act of September 25, 1789, Ch. 20, 1 Stat. 73, 92 *now codified as* 28 U.S.C. § 1654. In addition to § 1654, 28 U.S.C. § 2071 provides in part that "[t]he Supreme Court and all courts established

by Act of Congress may from time to time prescribe rules for the conduct of their business." FED.R.CIV.P. 83, promulgated by the Supreme Court pursuant to its rule-making authority, specifies that, "[e]ach district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules." The district court found, and we agree, that "[e]very federal court which has construed [28 U.S.C. §§ 1654, 2071 and FED.R.CIV.P. 83] has held that they permit a federal district court to regulate the admission of attorneys who practice before it." *See, e.g., Matter of Roberts,* 682 F.2d 105, 108 (3d Cir.1982); *Matter of Abrams,* 521 F.2d 1094, 1099 (3d Cir.), *cert. denied,* 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975); *Sanders v. Russell,* 401 F.2d 241 (5th Cir. 1968).

In addition to the authority delegated by Congress, federal courts have the inherent power to regulate the conduct of attorneys and to disbar attorneys. *Theard,* 354 U.S. at 281, 77 S.Ct. at 1276; *Ex Parte Secombe,* 60 U.S. (19 How.) 9, 13, 15 L.Ed. 565 (1856); *see generally State v. Cannon,* 206 Wis. 374, 240 N.W. 441 (1932) (reviewing cases from the Middle Ages to the nineteenth century). The courts' authority and responsibility for insuring the quality of attorney advocacy has long been recognized by the Supreme Court:

"The authority of the court over its attorneys and counselors is of the highest importance. They constitute a profession essential to society. Their aid is required not merely to represent suitors before the courts, but in the more difficult transactions in private life. The highest interests are placed in their hands and confided to their management. The confidence which they receive and the responsibilities which they are obliged to assume demand not only ability of a high order, but the strictest integrity. The authority which the courts hold over them, and the qualifications required for their admission are intended to secure those qualities."

*Randall v. Brigham,* 74 U.S. (7 Wall.) 523, 540, 19 L.Ed. 285 (1869). "[T]he power of disbarment is necessary for the protection of the public in order to strip a man of the implied representation by courts that a man who is allowed to hold himself out to practice before them is in 'good standing' so to do." *Theard,* 354 U.S. at 281, 77 S.Ct. at 1276. Accordingly, we hold that the adoption of the requirement of trial bar membership was within the district court's authority to regulate the admission of qualified attorneys who practice before the court.

 We now turn to the question of whether Brown's "previously granted license[ ] to practice and to try cases in the federal district court for the Northern District of Illinois may not be retroactively limited by Congress or the district court." "The legislature may undoubtedly prescribe qualifications for the office [of attorney and counselor] to which [an attorney] must conform, as it may, where it has exclusive jurisdiction, prescribe qualifications for the pursuit of the ordinary advocations of life." *Ex parte Garland,* 71 U.S. (4 Wall.) 333, 379, 18 L.Ed. 366 (1866); *see also Dent v. West Virginia,* 129 U.S. 114, 122–28, 9 S.Ct. 231, 233–35, 32 L.Ed. 623 (1888) (physician's license). "The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will ... tend to secure them against the consequences of ignorance and incapacity as well as deception and fraud." *Dent,* 129 U.S. at 122, 9 S.Ct. at 233. The qualifications placed on the license of a professional must be reasonably related to the profession and attainable by reasonable study or application. *Id.* at 122, 9 S.Ct. at 233; *Garland,* 71 U.S. at 379–80; *Schware v. Bd. of Bar Exam. of State of N.M.,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). The state may exclude from practice those who are not qualified to hold a professional license. *Dent,* 129 U.S. at 122–23, 9 S.Ct. at 233. *Cf. Theard,* 354 U.S. at 278, 77 S.Ct. at 1274. To protect society against unqualified licensed professionals, the State may require a licensed

professional to satisfy additional conditions after the license is granted. *Dent,* 129 U.S. at 123, 9 S.Ct. at 233. *See, e.g.,* Wis.S. C.R. 30.01 *et seq.* (continuing legal education requirement); Wis.Admin.Code § Med. 13 (1977) (continuing medical education for physicians). The decision to apply conditions retroactively, like a decision to adopt retroactive economic legislation, satisfies due process if it is justified by a rational legislative purpose. *Pension Benefit·Guarantee Corp. v. R.A. Gray & Co.,* —— U.S. ——, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984).

Public attention was drawn to the problem of inadequate trial advocacy by Chief Justice Burger's 1973 lecture expressing grave concern about the problem. Burger, *The Special Skills of Advocacy,* 42 Fordham L.Rev. 227 (1973). Indeed, several federal court of appeals judges expressed agreement with the Chief Justice. *See, e.g.,* Kaufman, *The Court Needs a Friend in Court,* 60 A.B.A.J. 175 (1974) ("Too many lawyers come into court today with only a diploma to justify their claims to be advocates. They are untrained and unadvised in the immensely practical work of litigation." *Id.* at 176); Bazelon, *The Defective Assistance of Counsel,* 42 U.Cin. L.Rev. 1 (1973) ("I come upon these 'walking violations of the sixth amendment' week after week in the cases I review." *Id.* at 2). The Devitt Committee, appointed by Chief Justice Burger in 1976, surveyed federal district judges and found that forty-one percent of them believe that the problem of inadequate advocacy is severe. 83 F.R.D. at 219. Twenty-five percent of the attorneys' performances in trials evaluated by the judges for the Federal Judicial Center Study were rated as "less than good." *Id.* The judges also expressed their belief that, "as a direct result of lawyer inadequacy, the interests of the clients were not fully protected." The Federal Judicial Center study also revealed a correlation between the quality of trial performances and the prior experience of the attorneys evaluated. *Id.* at 222. Moreover, a 1978 American Bar Association telephone survey of 599 lawyers chosen at random revealed that forty-one percent believed that lack of trial competency was a serious problem. Burger, *Some Further Reflections on the Problem of Adequacy of Trial Counsel,* 49 Fordham L.Rev. 1, 9 (1980). The impact on our justice system caused by inadequate trial lawyers was succinctly stated by Chief Justice Burger:

> "As the complexity and volume of both civil and criminal litigation escalates, the quality of advocacy directly affects the rights of litigants, the costs of litigation, the proper functioning of the system of justice, and, ultimately, the quality of justice. Far too many civil cases are currently being tried which experienced, well-trained lawyers would negotiate to settlement. There are too many cases taking four, five, or six days to try, which truly competent attorneys would try in a third that time—or less. Because of this, persons who are waiting to have their cases tried must wait longer. In civil cases the inadequacy translates into delays that increase the costs of obtaining judgment and rob even a just judgment of much of its value, the same kind of "economic larceny" which inflation works on all of us. Delays in criminal cases, when combined with our very liberal bail release concepts of today, may leave some persons on the streets who are ultimately going to be found guilty and confined. Conversely, there is the risk that some defendants who cannot gain release may be confined for long periods. Long trial delay with defendants at large means the public is placed in continuing jeopardy."

*Id.* at 19–20.

As we have discussed, the Devitt Committee, after reviewing its surveys and the Federal Judicial Center Studies, concluded that, "lawyers without previous trial experience are much more likely to turn in inadequate performances and are less likely to turn in very good or first rate performances, and it permits the inference that experience improves the quality of performance." 79 F.R.D. at 196–97. The experience requirement of the trial bar mem-

bership rule was recommended by the Devitt Committee "to insure a substantial probability of adequate trial performance" in response to evidence of the serious problem of inadequate trial advocacy and is analogous to the continuing legal education requirement imposed by some states. *See, e.g.,* Wis.S.C.R. 30.01 *et seq.* The Devitt Committee recommended that present members of the district court bars be required to satisfy the experience requirement because, "the data on inadequacy is drawn from present bar members spanning all age groups and that exempting all present members as well as all who become members prior to the effective date of the new rules will exempt the very individuals whose inadequate performances justify new standards." 79 F.R.D. at 200. Courts have looked with increasing favor on measures designed to insure an acceptable level of competency in licensed professionals. *See, e.g., Marrese v. Interqual,* 748 F.2d 373 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985) (physicians' peer review). We hold that the experience requirement is reasonably related to the practice of law and attainable by reasonable study or application. Furthermore, we hold that retroactive application of the experience requirement does not violate due process because it is justified by a rational legislative purpose—maintaining a high standard of advocacy in the federal courts.

## C. Procedural Due Process

 The district court held that because adoption of the trial bar membership requirement was an exercise of rulemaking rather than adjudicatory power, the Fifth Amendment's requirement of individualized due process did not apply. Brown argues that we should not apply this rule, drawn from *Bi-Metallic Investment Co. v. Colorado,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915), because the agency involved in the *Bi-Metallic* case was created by and answerable to a state legislature. Brown notes that the Supreme Court found in *Bi-Metallic* that when Congress passes legislation, individual "rights are protected in

the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." *Id.* at 445, 36 S.Ct. at 142. The plaintiff urges that his individual rights were not protected because "he had no voice" in either the selection of the advisory committee that solicited comments from attorneys in the Northern District of Illinois and reported their findings to the Northern District or in the selection of the district court's appointed judges. However, we need not resolve this issue of whether federal judges are answerable to Congress in the same manner in which federal agencies are answerable to Congress because an examination of the record reveals that Brown received notice and an opportunity to be heard. *Cf. Pension Benefit,* 104 S.Ct. at 2719. Whether an affected party must receive individual notice depends upon the character of the action. When individual interests are adversely affected by a legislation action, publication of the statute puts all individuals on notice of a change in the law of the jurisdiction; individual notice is not required. *Texaco v. Short,* 454 U.S. 516, 531–38, 102 S.Ct. 781, 793–97, 70 L.Ed.2d 738 (1982). "[I]t has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights." *Id.* at 536, 102 S.Ct. at 796. *See also Atkins v. Parker,* —— U.S. ——, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985). On the other hand, in an adjudicatory hearing, procedural due process requires that an individual whose interest is at stake must be given, "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). As to the requirement of an opportunity to be heard, the significance of the plaintiff's loss must be balanced with the governmental interest at stake. *Goldberg v. Kelly,* 397 U.S. 254, 262–63, 90 S.Ct. 1011, 1017–18, 25 L.Ed.2d

287 (1970). The court must consider three factors:

"First, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved in the physical and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

By arguing that he should have received individual notice, Brown urges us to create an exception to the rule that the legislative publication of a statute satisfies the notice requirement of procedural due process. *See Texaco*, 454 U.S. at 538, 102 S.Ct. at 797. We need not address Brown's questionable contention that individual notice of a legislative type action with retrospective aspects is constitutionally compelled because, as the record demonstrates, ample notice was given. *Cf. Pension Benefit*, 104 S.Ct. at 2719. The Devitt Committee's soliciting information about the adequacy problem and proposed solutions was patterned after the "notice and comment" procedure of the federal Administrative Procedures Act. Devitt, *Improving Trial Advocacy*, 72 F.R.D. 471, 475 (1976). The district court found that the Devitt Committee conducted a lengthy inquiry, which included a survey of the legal community's views and four public hearings, and published its first report in 1978. 79 F.R.D. 187 (1978). The Devitt Committee held additional hearings after the publication of its first report and issued a final report in 1979. 83 F.R.D. 215 (1979). Both reports recommended that the experience requirement for admission to the trial bar be applied to present members of district court bars. 79 F.R.D. at 199–200; 83 F.R.D. at 223. The District Court for the Northern District of Illinois appointed an advisory committee, the Austin Committee, to implement the Devitt Committee's recommendations. In ruling on the defendants' motion

for summary judgment, the district court found that, "[t]he Austin Committee published the proposed rules in the March 26, 1981, issue of the Chicago Law Bulletin and in the Mar.-Apr. 1981 issue of the Chicago Bar Record and invited interested parties to submit their views. All interested attorneys were invited to attend and participate in an open meeting on the proposed rules held on Apr. 26, 1981."

Addressing the issue of Brown's loss, examination of the district court's rules reveals that the loss he has suffered is that he cannot appear alone at the trial of a civil case, and he cannot appear alone in criminal proceedings. N.D.Ill. General R. 3.10. The plaintiff retains his right to appear alone in every aspect of civil litigation except the actual trial, i.e., filing the complaint, discovery, motions and status hearings. *Id.*

Balanced against this restriction on his right to practice, is the significant government interest in maintaining minimum standards of advocacy and improving the quality of the attorneys practicing before the district courts. The material reviewed by the Devitt Committee confirmed the existence of the inadequacy problem and supported Chief Justice Burger's observation that inadequate trial advocacy, "directly affects the rights of litigants, the costs of litigation, the proper functioning of the system of justice, and, ultimately, the quality of justice." 49 Fordham L.Rev. at 19–20. Addressing the issue of how to improve the quality of advocacy, the Devitt Committee discovered, "no one has yet devised an examination which will test one's ability to be a courtroom advocate." 79 F.R.D. at 196. The Devitt Committee adopted the experience requirement to insure a substantial probability of adequate trial performances. *Id.* Thus, the record reveals that the procedure followed in adopting the rules adequately identified the problem, researched various solutions, solicited public comment on both the problem and possible solutions, and properly determined that the problem of inadequate trial advocacy could be solved in part by requiring attorneys to

demonstrate their competence by satisfying the experience requirements. The district court found, and we agree, that the Committees' "notice and comment" procedures were elaborate and fair. Balancing the plaintiffs' loss against the significant governmental (and consumer) interest in maintaining minimum standards of advocacy and improving the quality of the attorneys practicing before the district court, we hold that the plaintiffs received notice reasonably calculated to appraise them of the pendency of the action and an adequate opportunity to be heard.

The decision of the district court is AFFIRMED.